OPINION OF THE COURT
Beatrice S. Burstein, J.
Plaintiffs’ motion for an order granting leave to reargue and renew, and for reconsideration, and the motion by defendants Newburger Loeb & Co., Inc. (the corporation), Newburger, Loeb & Co. (the partnership), Robert L. Newburger, Andrew M. Newburger, John F. Settel, Sanford Roggenburg, Richard D. Stern, Harold J. Richards, Robert L. Stern, and Richard D. Stern, Walter D. Stern and Robert L. Stern, as executors of the estate of Leo Stern (the Newburger defendants) for reconsideration, are consolidated for purposes of determination. Leave is granted, and upon renewal, reargument and reconsideration, the court recalls the whole of its earlier decision of July 27, 1979, and substitutes the following in its place.
On February 17, 1971, the corporation commenced an action in the United States District Court for the Southern District of New York,[1] against the plaintiffs. The latter asserted nine counterclaims against the corporation and impleaded addi *420 tional defendants. All defendants in this action were parties, in varying capacities, to the Federal action. Two of the counterclaims, which were dismissed for lack of subject matter jurisdiction by the Federal courts, were reasserted in this case as plaintiffs’ second and third causes of action.
In this action, three pending motions (two of which are essentially cross motions) have been consolidated for purposes of determination. All seek summary, or partial summary judgment dismissing all or parts of certain of plaintiffs’ causes of action.
The principal motion is made by the Newburger defendants who contend that plaintiffs’ second and third causes of action are time barred under CPLR 205 (subd [a]). The two cross motions, one by defendants Muh and Sloane, the other by defendant Kayne, were made as motions in chief, but upon less than the notice prescribed by CPLR 2214 (subd [b]). Nevertheless, since they meet the test of CPLR 2215 for cross motions, the court accepts them as such.
All three cross movants seek dismissal (1) of the first cause of action on the ground it fails to state a cause of action, (2) of the second and third causes of action as time barred, (3) of the third cause of action on the grounds of collateral estoppel and, alternatively, res judicata. Defendants Muh and Sloane seek dismissal of the second cause of action on the additional ground of collateral estoppel and, alternatively, res judicata.
The Newburger defendants essentially join in the application of defendants Muh and Sloane addressed to the first and third causes of action, but not their claim as to collateral estoppel or res judicata respecting the second cause of action.
Notwithstanding the elementary rule that on a motion to dismiss a complaint for failure to state a cause of action, a liberal construction should be accorded to pleadings, and the court assumes the truth of, and draws every favorable inference from, well-pleaded allegations (219 Broadway Corp. v Alexander’s, Inc., 46 NY2d 506; Rovello v Orofino Realty Co., 40 NY2d 633; Kober v Kober, 16 NY2d 191), the first cause of action fails.
In brief, the critical allegations describe a scheme in the nature of a conspiracy, the purpose of which was to coerce plaintiffs (who were general and limited partners in the defendant partnership) to accede to a takeover of the partnership by the defendant corporation, through a transfer of assets. The nub of the complaint is a statement by plaintiffs *421 that the "malicious and baseless litigation” commenced against them (including the Federal action) was resolved in their favor. To bolster this claim, plaintiffs suggest a variety of labels or characterizations to support a cause of action. But there are no plain or cognizable averments relating to the issuance of process capable of being abused, as the term "process” has been defined, nor are there any allegations of interference with plaintiffs’ persons or property by legally issued process. Hence, a cause of action for abuse of process will not lie. (See Julian J. Studley, Inc. v Lefrak, 41 NY2d 881, 884; see Board of Educ. v Farmingdale Classroom Teachers Assn., Local 1889, AFT AFL-CIO, 38 NY2d 397, 403; see Williams v Williams, 23 NY2d 592; see Drago v Buonagurio, 61 AD2d 282, 285, revd on other grounds 46 NY2d 778.)
In metaphorical terms it is said that in order to maintain a cause of action for prima facie tort, a plaintiff must allege that the acts complained of were done without justification, or in other words, with a "disinterested malevolence”. (ATI, Inc. v Ruder & Finn, 42 NY2d 454; United Pickle Co. v Omanoff, 63 AD2d 892.) Ergo, a showing of motives such as self-interest, profit, or business advantage negate the implication of malice. (Reinforce, Inc. v Birney, 308 NY 164; Beardsley v Kilmer, 236 NY 80; Squire Records v Vanguard Recording Soc., 25 AD2d 190, affd 19 NY2d 797; Penn-Ohio Steel Corp. v Allis-Chalmers Mfg. Co., 7 AD2d 441; Benton v Kennedy-Van Saun Mfg. & Eng. Corp., 2 AD2d 27; Hecht v Air Reduction Co., 41 Misc 2d 463.) In this case, it is repeatedly asserted that precisely such motives prompted defendants’ acts. It is manifest that a prima facie tort cause of action has not been stated.
If any cause of action does lie, it sounds in malicious prosecution. Since specific allegations of interference with plaintiffs’ persons or property by use of an incidental remedy are an essential element of malicious prosecution (Burt v Smith, 181 NY 1; Hoppenstein v Zemek, 62 AD2d 979), and these are absent here, plaintiffs have failed to state this cause of action. Additionally, plaintiffs’ allegations of civil conspiracy are equally exiguous. A claim of conspiracy must be bottomed on an independent tort, and one has not been adequately pleaded. (Satin v Satin, 69 AD2d 761.) Accordingly, the court finds the first alleged cause of action insufficient.
Plaintiffs seek leave to replead their first cause of action, claiming defendants obtained an injunction which would constitute the interference sufficient to sustain a cause of action *422 for malicious prosecution. Leave hereby is granted (CPLR 3211, subd [c]), provided plaintiffs serve a copy of the re-pleaded claim (which is to contain all operative dates) upon defendants within 30 days following service upon them of a copy of the order to be entered here. If plaintiffs fail to replead within the time permitted, summary judgment dismissing the first cause of action will be granted.
The second and third causes of action reassert plaintiffs’ third and eighth counterclaims pleaded in the Federal action. These were dismissed by the Federal court for lack of subject matter jurisdiction, and movants contend these causes of action now are time barred, relying upon CPLR 205 (subd [a]) to establish the date when the dismissed claims had to be reasserted. CPLR 205 (subd [a]) provides: "If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff * * * may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination”.
CPLR 205 (subd [a]) is operative in cases "in which the prior action was defective and so had to be dismissed”. (George v Mt. Sinai Hosp., 47 NY2d 170, 180.) Lack of subject matter jurisdiction is such a quintessential defect. (George v Mt. Sinai Hosp., supra, at p 178.) CPLR 205 (subd [a]) is an error-correcting procedural tool for a complaining party, and despite the absence of any reference to a defendant, CPLR 205 (subd [a]) can be, and has been, applied to a defendant’s counterclaims. (See CPLR 3019, subd [d]; see Russo v Iacono, 73 AD2d 913; see Cohoes Housing Auth. v Ippolito-Lutz, Inc., 65 AD2d 666; see Lebrecht v Orefice, 199 Misc 1025.)[2] This is supported by CPLR 3019 (subd [d]): "[a] cause of action contained in a counterclaim * * * shall be treated, as far as practicable, as if it were contained in a complaint”.
Plaintiffs claim CPLR 203 (subd [d]) controls. It provides: "Where a defendant has served an answer containing a defense or counterclaim and the action is terminated because of the plaintiff’s death or by dismissal or voluntary discontinuance, the time which elapsed between the commencement and *423 termination of the action is not a part of the time within which an action must be commenced to recover upon the claim in the defense or counterclaim”. But CPLR 203 (subd [d]) saves a defendant’s claim which would otherwise be time barred, only because of some action taken with respect to the opposing party’s claim. When the second and third causes of action were each dismissed in the Federal action for lack of subject matter jurisdiction, it was not only because of action with respect to the Federal complaint. The defects were in the subject matter of the counterclaims themselves, and this warrants application of the extension of time relief afforded by CPLR 205 (subd [a]) rather than that of CPLR 203 (subd [d]).
CPLR 205 (subd [a]) prescribes a limitation of six months following the date of termination to reassert claims. Accordingly, the court must determine the applicable date, bearing in mind that the purpose of CPLR 205 (subd [a]) is to permit a valid, if defective, claim to be saved. (George v Mt. Sinai Hosp., supra.)
Fixing the date of the trial court’s determination as to the date of termination for purposes of CPLR 205 (subd [a]) would be counterproductive. In general, a plaintiff might be prevented from simultaneously commencing a new action and prosecuting an appeal on the same cause. (See CPLR 3211, subd [a], par 4.) To avoid Scylla without being drawn into Charybdis, a plaintiff might forego a meritorious appeal, fearful that the time which elapses while awaiting an appellate determination may bar repleading. Accordingly, a new action might be needlessly commenced, for the appellate court might have found error below, and reversed the dismissal.
Authorities which hold that the date of termination, for purposes of CPLR 205 (subd [a]), is the date of the trial court’s determination,[3] rather than that of the appellate court, are distinguishable from the case at bar, since these deal with, or discuss, delaying tactics, including failure to prosecute an appeal. By way of contrast, in this case it is defendants who threatened to enmesh plaintiffs in litigation for years, while plaintiffs actively pursued their appeal. Therefore, the court finds the applicable termination date here for purposes of CPLR 205 (subd [a]) is the date of determination of the appeal. (Buchholz v United States Fire Ins. Co., 269 App Div 49, mot *424 for lv to opp den 294 NY 807; 1 Weinstein-Korn-Miller, NY Civ Prac, par 205.07.)
In the instant case, there are two distinct dates of termination:
(a) the third counterclaim (which is reasserted here as the second cause of action), was remanded by the Circuit Court of Appeals to the District Court with instructions to dismiss. Plaintiffs’ petition to the United States Supreme Court for a writ of certiorari on this issue was denied (see Gross v Newburger, Loeb & Co., 434 US 1035) on January 16, 1978. This is, then, the measuring date of termination of the second cause of action.
(b) On August 24, 1977 the Circuit Court of Appeals affirmed the District Court’s dismissal of the eighth counterclaim (which constitutes the third cause of action here). Plaintiffs took no further action. Consequently, August 24, 1977, marks the date of termination of the third cause of action.
The remand by the Circuit Court of Appeals of other of plaintiffs’ counterclaims for recomputation of damages (the first, second and fourth) did not extend the date of termination. Plaintiffs knew that the recomputation could not affect the decision that the court lacked subject matter jurisdiction over the third and eighth counterclaims, and this deficiency could not be corrected on remand. That plaintiffs knew this is evidenced by their reassertion in this action of the dismissed claims, long before any determination on the remand. Surely, plaintiffs would not have invited another dismissal on procedural grounds if they believed the Federal action was still pending. (See CPLR 3211, subd [a], par 4.)
Furthermore, the Federal Rules of Civil Procedure (in US Code, tit 28, Appendix), and particularly subdivision (b) of rule 54, relied upon by plaintiffs to extend the date of termination, are inapplicable, for they only govern procedure in the Federal District Courts and cannot be applied to a remand made by a circuit court of appeals, which has its own rules. (See the proposed amendments to the Federal Rules of Appellate Procedure, 9 Moore’s Federal Practice [2d ed] Supp., eff Aug. 1, 1979.)
It follows then, that absent other factors, in order to have been timely instituted pursuant to CPLR 205 (subd [a]), the second cause of action had to be interposed within six months of January 16, 1978, i.e., by July 16, 1978; while the third *425 cause of action had to be interposed within six months after August 24, 1977; i.e., by February 24, 1978.
 As to the latter cause of action, no contentions urged by the plaintiffs in mitigation rebuts the fact that the earliest date of service upon any defendant was made on the corporation, on June 26, 1978, long after the six-month extension had expired. Accordingly, the third cause of action is dismissed as to all defendants as time barred. However, other circumstances pressed by the plaintiffs may support a different conclusion as to the second cause of action. Their argument is twofold. First, they claim that timely service of the summonses, in this action, upon some of the defendants satisfied the standards of the Statute of Limitations as to other defendants, because they were united in interest. Second, they argue that in any case defendants Muh, Kayne and Sloane are equitably estopped from raising the Statute of Limitations as a defense. The court deals with these contentions seriatim.
When a unity of interest exists, service upon one defendant does arrest the running of the limitation period as to others. (Prudential Ins. Co. of Amer. v Stone, 270 NY 154; CPLR 203, subd [b]; 1 Weinstein-Korn-Miller, NY Civ Prac, par 203.05.) Is there such a unity in this case?
An instructive definition frequently employed by the courts (see e.g., Scher v Kronman, 70 AD2d 354; Trane Co. v Robinson Constr., 61 AD2d 360) was supplied by the decision in Prudential Ins. Co. of Amer. v Stone (supra, p 159) which teaches that parties are united in interest when their "interest * * * in the subject-matter is such that they stand or fall together and that judgment against one will similarly affect the other”.
In this case, plaintiffs’ second cause of action on behalf of plaintiff Gross alleges, in pertinent part, that all the defendants entered into a conspiracy to injure plaintiffs by transferring partnership assets to the corporate defendant and that the transfer constituted a conversion for which all of the defendants are liable as joint tort-feasors.
A unity of interest has sometimes been found among defendant partners and alleged coconspirators (see, e.g., Howell v Dimock, 15 App Div 102; Stuyvesant Ins. Co. v Matusow, 26 Misc 2d 860; Paliotto v Hartman, 9 Misc 2d 963), but in other cases, courts have held that unity of interest does not exist where defenses available to one defendant are unavailable to another (Stevens v Young, 272 App Div 784), or where one *426 defendant, but not another, may be held liable. (Scher v Kronman, supra; Halucha v Jockey Club, 31 Misc 2d 186; see Tolling of Statute of Limitations Where Process is Not Served before Expiration of Limitation Period, as Affected by Statutes’ Defining Commencement of Action, or Expressly Relating to Interruption of Running of Limitations, Ann. 27 ALR2d 236, § 10, p 302 et seq.) The court is mindful of these cases and the liberal construction accorded to the predecessor section of CPLR 203 (subd [b]) (see Hatch v Cherry-Burrell Corp., 274 App Div 234, lv to app den 274 App Div 869) and, presumably, the section at issue. (See CPLR 104.)
However, in this case other facts and circumstances must be considered. This claim previously was tried before the District Court,[4] which found certain defendants, specifically the corporation, Kayne, Rishler, Persky and the law firm of Finley Humble Wagner Heine & Underberg (hereafter Finley Humble) liable for a willful conversion, while other defendants, partners of the defendant partnership, and other alleged coconspirators were not. As set forth, infra, this determination lacks precedential value because the cause of action eventually was dismissed for lack of subject matter jurisdiction.[5]
Nevertheless, for the purposes of determining whether the defendants in this action are united in interest, slavish reliance upon the formalism of the title "partnership” or allegations of a coconspiracy, while ignoring the District Court’s findings, would be otiose. Clearly, it is possible, if not probable, that certain partners and/or alleged coconspirators successfully raised defenses in Federal court which were unavailable to the others, and second, that some defendants in this action may be found liable while others may not. In such circumstances, the substance of facts outweighs the form and for this reason, the court finds these defendants are not united in interest as to the second cause of action for the purpose of tolling the limitation period during which service upon them had to be effected. (Stevens v Young, supra; Halucha v Jockey Club, supra.)
One exception to this finding is defendants Persky and Finley Humble. Persky is a member of Finley Humble. Both were found liable by the District Court, and they have not demonstrated, in this motion, any separate defenses. As a *427 consequence, and because a partnership and its individual partners are jointly and severally liable for a tortious act of conversion committed by one partner (Matter of Peck, 206 NY 55; Martinoff v Triboro Roofing Co., 228 NYS2d 139), the court concludes that these two defendants will stand or fall together on the second cause of action, and judgment against one will exactly affect the other. This being so, the court finds them to be united in interest for purposes of tolling the limitation period.[6]
It follows, then, that the second cause of action must be dismissed as time barred with respect to all defendants who were served after July 16, 1978, except Muh, Kayne and Sloane (see discussion, infra) and defendants Persky and Finley Kumble. Timely service upon either Persky or Finley Kumble binds the other. The record reveals service upon the following defendants was prior to July 16, 1978, and therefore timely: Robert S. Persky (and therefore Finley Kumble), John F. Settel, Andrew Newburger, the partnership, the corporation, Robert L. Newburger, and Sanford Roggenburger. As to all other defendants, except Muh, Kayne and Sloane, the second cause of action is dismissed.
Plaintiffs’ second contention, which the court now addresses, is that defendants Muh, Kayne and Sloane should be estopped from asserting the Statute of Limitations as an affirmative defense. "An estoppel rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury. When this occurs it would be inequitable to permit the first to enforce what would have been his rights under other circumstances.” (Metropolitan Life Ins. Co. v Childs Co., 230 NY 285, 292-293.)
The doctrine of estoppel has been invoked in appropriate cases to prevent a defendant from employing the Statute of Limitations as a sword. (See, e.g., 53 CJS, Limitations of Actions, § 25, and cases cited therein.) Thus, a misrepresentation by a defendant, upon which a plaintiff reasonably relied to his detriment, may be sufficient to defeat an otherwise valid Statute of Limitations defense (Simcuski v Saeli, 44 NY2d 442), even when the misrepresentation is made innocently, i.e., without intent, by defendant or its agent. (Dupuis v Van Natten, 61 AD2d 293; Florio v General Acc. Fire & Life Assur. *428 Corp., 396 F2d 510 [applying New York law]; see Fraud, Misrepresentation, or Deception as Estopping Reliance on Statute of Limitations, Ann. 43 ALR3d 429, § 4, subd [b] and cases cited therein.) The Statute of Limitations is designed to prevent the institution of stale claims (Conklin v Furman, 48 NY 527, 529) and should not be employed as an offensive or tactical weapon.
The issues now before this court have been in litigation for more than eight years. During this time, the Circuit Court of Appeals credited plaintiffs’ substantive allegation that defendants had threatened to keep plaintiffs "tied up in litigation for years”. In this framework, defendants’ present plea, that plaintiffs waited too long before reasserting these causes of action dismissed by the Federal court, may be construed by some as classic "chutzpah”. On the other hand, plaintiffs’ reliance on the doctrine of equitable estoppel must be carefully scrutinized.
Briefly, plaintiffs claim they did not assiduously pursue personal service upon defendants Muh, Kayne and Sloane because of a conceded representation of their counsel (Borstein) that he was authorized to accept service of process on their behalf. Borstein was initially served on June 26, 1978, and by letter dated July 5, 1978, Borstein rejected the service, stating he had not agreed to a suit in Nassau County, or service of process without a complaint. To this, plaintiffs respond that prior to this letter Borstein never prescribed these terms as preconditions to his authority to accept service of process. In his carefully worded affirmation in response, Borstein does not claim to have originally told plaintiffs of these preconditions, although he says he communicated them to his clients.
He then argues that even if there was a misrepresentation about the extent of his authority (which he does not concede), it ceased to be effective when he returned the summonses by letter within the otherwise applicable period of limitations. The inescapable fact is that Borstein’s letter did not unconditionally reject service. Instead, he invited plaintiffs’ counsel to call him when he received the letter, stating, "By that time I will have had a chance to speak to [my clients].” Both parties agree that there were further discussions regarding service, and that Borstein, with authority to do so, did accept service of exactly the same summonses without complaint, within 20 days after he wrote the letter returning them. Surely, a trier *429 of facts might conclude that Borstein’s letter alone sufficed as an estoppel as of July 5, 1978, or that plaintiffs did nothing to perfect Service before the statute had run its course because they relit 3d on Borstein’s original representations, letter, and hter stab, meats.
Indeed even if the alleged misrepresentation of authority ceased when Borstein rejected the process, an estoppel may still be operative. Is it unreasonable to conclude that when plaintiffs subsequently served defendants (on July 25, 1978) they discharged their obligation to exercise due diligence in reserving defendants? Assuming that Borstein’s letter was mailed on the date it was allegedly written, and plaintiffs received it three days later (a Saturday) the first business day thereafter was July 10, 1978. A 15-day hiatus is far less than periods of time found inexcusable in similar circumstances. (See 509 Sixth Ave. Corp. v New York City Tr. Auth., 24 AD2d 975; Ball v Utica Mut. Ins. Co. of Utica, 60 Misc 2d 459; see Plaintiff’s Diligence as Affecting His Right to Have Defendant Estopped from Pleading the Statute of Limitations, Ann. 44 ALR3d 760, § 6, and cases cited therein.)
Borstein’s candid admission that he had an "on-going friendship” with plaintiffs’ counsel, presumably developed during the lengthy course of litigation, may be shown to justify plaintiffs’ reliance upon Borstein’s initial representation of authority and his additional promise to speak to his clients about acceptance of service of process. But the resolution of these factual issues cannot be made upon papers submitted to the court. On the other hand, delaying resolution until the trial of this action would needlessly prejudice defendants, for if they are not equitably estopped from raising the Statute of Limitations defense, the second cause of action may be dismissed against them now. Fairness to all parties dictates, and the order to be entered shall provide, that there be an immediate trial, by the court, of the factual issue of whether defendants are equitably estopped from raising the defense of the Statute of Limitations with respect to the second cause of action. (See CPLR 3212, 2218.)
In pursuing this route, the court has considered the claim of defendants Muh and Sloane that plaintiffs’ second cause of action is barred as to them by collateral estoppel or res judicata, but finds it lacks merit. The second cause of action proffers the same facts that were alleged in the third counterclaim in the District Court. By motion, defendants Muh and *430 Sloane and others sought dismissal of that counterclaim on the ground the Federal court lacked subject matter jurisdiction. Although plaintiffs did not appeal from the fi/nding of Judge Owen that defendants Muh and Sloane were hot liable, they did file an unsuccessful petition for a writ of certiorari jn the United States Supreme Court on the issue or subject matter jurisdiction.
It is plain, therefore, that the issue of subject matter jurisdiction was appealed in the same case, not collaterally attacked. It is elementary that a court possesses jurisdiction to determine whether it has jurisdiction. (Vecchione v Wohlgeamuth, 426 F Supp 1297, affd 558 F2d 150, cert den sub nom. Beal v Vecchione, 434 US 943.) A fortiori, this court is bound by the holding of the Circuit Court of Appeals, to the effect that the District Court lacked subject matter jurisdiction. Hence, the District Court judgment as to Muh and Sloane is void, and the principle of res judicata cannot validate any portion thereof. (Vecchione v Wohlgeamuth, supra; see O’Frias v Melton, 32 AD2d 1046, affd 27 NY2d 638.) Stated another way, if this court were to uphold the contention of defendants Muh and Sloane, that the District Court’s findings of no liability on their part survives, despite a judgment declared void, and a determination that the District Court lacked jurisdiction, by reductio ad absurdum, upon every appeal on the issue of subject matter jurisdiction any party against whom the court had rendered an adverse factual finding would be required to appeal every such finding or be bound thereby. Accordingly, so much of the motion of defendants Muh and Sloane which seeks an order barring plaintiffs’ second cause of action on the grounds of collateral estoppel and res judicata is denied.

. The opinion by the United States Court of Appeals for the Second Circuit (Newburger, Loeb & Co. v Gross, 563 F2d 1057) provides an exhaustive history of this litigation and an immensely instructive exegesis on Federal procedural practice, as well as wide-ranging views on partnerships, corporate, and securities law.

. It also has been applied to prior actions commenced in Federal court within this State. (See Smith v Rensselaer County, 52 AD2d 384.)

. See, e.g., Taylor vPutnam’s Sons (41 Misc 2d 1003).

. See Newburger, Loeb & Co. v Gross (71 Cir 685 [D.C., S.D.N.Y. 1976]).

. See Newburger, Loeb & Co. v Gross (563 F2d 1057,1061, cert den 434 US 1035).

. The court makes no determination as to whether any defendants were united in interest with respect to the still to be repleaded first cause of action.