William J. RODGERS, Plaintiff,

v.

GROW–KIEWIT CORP.–MK; Local 14, International Union of Operating Engineers; Jack Messinger, Individually and as Business Manager of Local 14, International Union of Operating Engineers, Defendants.

No. 80 Civ. 1819 (RWS).

United States District Court,
S. D. New York.

Jan. 29, 1982.

Cole & Deitz, New York City, for plaintiff; Robert M. Kerrigan, New York City, of counsel.

Berman, Paley, Goldstein & Berman, New York City, for defendant Grow-Kiewit Corp.-MK; Robert G. Benisch, New York City, of counsel.

Colleran, O'Hara, Kennedy & Mills, P. C., Garden City, N. Y., for defendants Local 14 Intern. Union of Operating Engineers and John J. Messinger; Stanley Q. Casey, Garden City, N. Y., of counsel.

## OPINION

SWEET, District Judge.

Presently before the court in this action by William J. Rodgers, Sr. ("Rodgers") against the joint venture employer, Grow-Kiewit Corp.-MK ("Grow-Kiewit"), Local 14 of the International Union of Operating Engineers ("Local 14" or "the Union"), of which Rodgers was a member, and Jack Messinger individually and as business manager of Local 14 ("Messinger") are three post trial motions: Messinger, having made a motion for a directed verdict at the close of all the evidence, has moved pursuant to Rule 50(b) of the Federal Rules of Civil Procedure for Judgment Notwithstanding the Verdict ("JNOV") dismissing the jury verdict rendered against him awarding Rodgers damages of $170,000 for a prima facie tort. He has also moved in the alternative for a new trial pursuant to Fed.R. Civ.P. 59 and 50(c). Rodgers has made a motion pursuant to Fed.R.Civ.P. 59(e) to amend the judgment to include attorneys' fees. For the reasons set forth below, Messinger's motions for JNOV will be granted, the motion for a new trial will be conditionally granted, and Rodger's motion to amend the judgment to include attorneys' fees will be denied.

Rodgers brought an action based upon his failure to be appointed master mechanic at the New York City Water Tunnel Project in the Bronx (the "tunnel project") and setting forth four causes of action, namely: (1) breach of the industry-wide collective bargaining agreement between Local 14 and Grow-Kiewit in violation of Section 301 of the Labor Management Relations Act of 1947 as amended ("LMRA"), 29 U.S.C. § 185 against Grow-Kiewit; (2) breach of the duty of fair representation in violation of Section 301 of the LMRA, 29 U.S.C. § 185 against defendant Local 14; (3) age discrimination in violation of Section 7 of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626(a) and (c), ("ADEA") against Local 14 and Grow-Kiewit, and; (4) a pendent state claim of prima facie tort against John Messinger.

After the close of Rodgers' direct case at trial, Grow-Kiewit stipulated to summary judgment against itself with respect to the cause of action for breach of the collective bargaining agreement. Thereafter, defendants Local 14 and Messinger moved for a directed verdict on all causes of action against them. The court granted defendants' motion in part and dismissed plaintiff's cause of action for unfair representation, holding that Local 14 had the unqualified right to designate the master mechanic pursuant to the collective bargaining agreement. Local 14 withdrew its cross-claim against defendant Grow-Kiewit for indemnity on the ADEA claim and Grow-Kiewit was thereafter dropped from the case by the court. The jury returned a verdict dismissing Rodgers' claims of age discrimination and awarded him damages of $170,000 on the pendent claim for prima facie tort against Messinger individually.

It was conceded that Rodgers was a member in good standing of Local 14 and had been the master mechanic on the tunnel project for an eight-year period prior to April 23, 1979 with the exception of a two-year period due to the contractor's financial difficulties and that the duties of a master mechanic included the resolution of disputes between union members, the informal processing of grievances and the enforcement of the collective bargaining agreement. The evidence was also undisputed that shortly prior to April 23, 1979 Messinger appointed George Koshefsky ("Koshefsky") master mechanic to replace Rodgers, an action he was authorized to do under the terms of the Union bylaws and the collective bargaining agreement. Rodgers' appeals to the Union Executive Board were unsuccessful, and the Union members ratified the Executive Board's decision. The evidence also established the independence, executive nature and high pay for the job of master mechanic, a position which was referred to in the vocabulary of the litigation as a "plum."

Rodgers testified that he confronted Messinger and stated that the refusal to appoint him (Rodgers) master mechanic resulted because union members "put the

bull" on Messinger, by which he meant that the appointment was used to further Messinger's interests in retaining his elective position and to gain favor among the younger members of the Union. He testified further that he requested Messinger to tell him if any misstatements were made in the course of the confrontation and that Messinger did not contradict him. This was contended during the trial by Rodgers to constitute malicious conduct on the part of Messinger. Messinger now contends that the motive of seeking to increase one's power within a union, even if the jury believed it to exist, contrary to his explanation, is not a motive that will serve to state a cause of action for prima facie tort, and that further he had received complaints about Rodger's performance as master mechanic which constituted a portion of his motivation.

■ The standard to be applied for a JNOV is the same as the test for ordering a directed verdict in that such a motion may be granted only when there can be but one reasonable conclusion as to the proper judgment. Fed.R.Civ.P. 50. *See Brady v. Southern R. Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234–35, 88 L.Ed. 239 (1943). *H. L. Moore Drug Exchange v. Eli Lilly & Co.*, 662 F.2d 935, 940 (2d Cir. 1981); *Beech Cinema, Inc. v. Twentieth Century-Fox Film Corp.*, 622 F.2d 1106, 1107–08 (2d Cir. 1980). In considering the motion the court cannot weigh credibility of the evidence and must view the evidence in the light most favorable to the plaintiff. *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir. 1970); *Armstrong v. Commerce Tankers Corp.*, 423 F.2d 957, 959 (2d Cir.), *cert. denied*, 400 U.S. 833, 91 S.Ct. 67, 27 L.Ed.2d 65 (1970).

■ Prima facie tort has been defined as "the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or series of acts that would otherwise be lawful." *ATI, Inc. v. Ruder & Finn, Inc.*, 42 N.Y.2d 454, 458, 398 N.Y.S.2d 864, 866, 368 N.E.2d 1230, 1232 (1977), *quoting Ruza v. Ruza*, 286 A.D. 767, 769, 146 N.Y.S.2d 808, 811 (1st Dept. 1955). *See also Kalso Systemet, Inc. v. Jacobs*, 474 F.Supp.

666, 671 (S.D.N.Y.1979) (Weinfeld, J.); *Smith v. County of Livingston*, 69 A.D.2d 993, 994, 416 N.Y.S.2d 130, 132 (4th Dept. 1979); *Belsky v. Lowenthal*, 62 A.D.2d 319, 322, 405 N.Y.S.2d 62, 64 (1st Dept. 1978), *aff'd*, 47 N.Y.2d 820, 418 N.Y.S.2d 573, 392 N.E.2d 560 (1979). The pertinent inquiry in the case is whether Messinger's intention was to harm Rodgers; whether the action was based on malice and personal animus. *John C. Supermarket, Inc. v. New York Property Ins. Underwriting Ass'n.*, 60 A.D.2d 807, 400 N.Y.S.2d 824, 825 (1st Dept. 1978); *Davis v. Williams*, 59 A.D.2d 660, 661, 398 N.Y.S.2d 281, 283 (1st Dept. 1977), *aff'd*, 44 N.Y.2d 882, 407 N.Y.S.2d 630, 379 N.E.2d 158 (1978); *Fifty States Management Corp. v. Niagara Permanent Sav. & Loan Ass'n.*, 58 A.D.2d 177, 178, 396 N.Y. S.2d 925, 927 (4th Dept. 1977). Moreover the malicious motive must be the sole motive. The New York Court of Appeals referred to the plaintiff's burden of showing that the defendants' actions were "solely" malicious, and stated:

> the settled rule that "the genesis which will make a lawful act unlawful must be a malicious one unmixed with any other and exclusively directed to injury and damage of another." *Beardsley v. Kilmer*, 236 N.Y. 80, 90 [140 N.E. 203] [1923] . . . . In the absence of proof that the motivation was entirely malicious, plaintiff has no remedy at law.

*Reinforce, Inc. v. Birney*, 308 N.Y. 164, 169, 124 N.E.2d 104 (1954). *See also Korry v. International Tel. & Tel. Corp.*, 444 F.Supp. 193, 195 (S.D.N.Y.1978); *Davis v. Williams*, 59 A.D.2d at 661, 398 N.Y.S.2d at 283; *Squire Records, Inc. v. Vanguard Recording Soc. Inc.*, 25 A.D.2d 190, 191–92, 268 N.Y. S.2d 251, 254 (1st Dept. 1966), *aff'd*, 19 N.Y.2d 797, 279 N.Y.S.2d 737, 226 N.E.2d 542 (1967).

■ Consequently, motives of profit, economic self-interest or business advantage are by their terms not malicious, and their presence, even if mixed with malice or personal animus, bars recovery under prima facie tort. *Keating v. BBDO Int'l. Inc.*, 438 F.Supp. 676, 683 (S.D.N.Y.1977) (to obtain

stock; selfish purpose); *Mercantile Fin. Corp. v. P & F Indust., Inc.*, 63 A.D.2d 1014, 406 N.Y.S.2d 357, 358 (2d Dept. 1978) (business advantage); *Fifty States Management Corp. v. Niagara Permanent Sav. & Loan Ass'n.*, 58 A.D.2d at 178, 396 N.Y.S.2d at 927 (profit motive); *Williams v. Arpie*, 56 A.D.2d 689, 690, 391 N.Y.S.2d 740, 742 (3d Dept. 1977), *aff'd*, 44 N.Y.2d 689, 405 N.Y.S.2d 437, 376 N.E.2d 909 (1978), (motive to enhance ability to control an organization one is a member of); *Wegman v. Dairylea Coop. Inc.*, 50 A.D.2d 108, 115, 376 N.Y.S.2d 728, 735 (4th Dept. 1975), *app. dismissed*, 38 N.Y.2d 918, 382 N.Y.S.2d 979, 346 N.E.2d 817 (1976) (motive of "personal gain is inconsistent with the 'intent to harm' requirement of a prima facie tort"); *Squire Records, Inc. v. Vanguard Recording Soc., Inc.*, 25 A.D.2d at 191–92, 268 N.Y.S.2d at 254 ("where there are other motives, e.g., profit, self-interest, business advantage, there is no recovery under tort *prima facie*.")

By testifying that Messinger's motive concerned politics within the Union, namely Messinger's desire to use the appointive position to increase his power within the Union and to gain favor among the younger members of the Union, Rodgers established a motive that was not actionable. Such economic self-interest motives and the interest of improving one's power and position within one's organization are inconsistent with the requirement of a solely malicious motive. In *Williams v. Arpie*, 56 A.D.2d 689, 391 N.Y.S.2d 740, in an action by a woman against a member of her religious order who was head of a child care institution with which she was associated for causing her to be dismissed from the order and having her vows in the order severed, the court stated:

> As conceded by plaintiff, defendants' actions were not intended solely to injure her, but also to benefit Arpie by enhancing his ability to control affairs at St. Cabrini. Such being the case, there is lacking the requisite " * * * malicious and unjustifiable attempt to injure plaintiff, unaccompanied by any motive of self profit * * * * " (59 N.Y.Jur., Torts, § 25)

which has been held essential in an action for prima facie tort. . . .

*Id.* at 690, 391 N.Y.S.2d at 742. Although there may be evidence of ill will between Messinger and Rodgers, as a matter of law, Rodgers' evidence requires a finding that the motive was not solely malicious. Consequently, the motion for a JNOV should be and hereby is granted.

Furthermore, there was substantial evidence and admissions, uncontroverted, that numerous complaints by workers in the Union were addressed to Messinger concerning Rodgers' performance. Regardless of the merits of the complaints filed against Rodgers, which were challenged by him, there was no evidence that the complaints were pretextual, and it was established that Messinger's actions to some degree were motivated by these complaints. The conversations between Rodgers and Messinger, as related by Rodgers, establish the complaints as a motive for the failure to appoint.

Finally, there is no evidence cited by Rodgers to establish malice and an intent to harm Rodgers, as opposed to a desire to accede to the wishes, perceived or reported, of the union membership. Indeed, the lack of such a motive was established by the offer of Messinger to place Rodgers as an operating engineer and by Rodgers' voluntary retirement. Rogers appears not to have established the level of proof presented in *Reinforce v. Birney*, 308 N.Y. 164, 169, 124 N.E.2d 104, which was also dismissed "because plaintiffs did not carry their burden of showing that defendants' acts were solely 'malicious'."

In the interests of complete disposition, it should also be noted that Messinger's motion for a new trial would be well founded, were it not for the relief already determined. Fed.R.Civ.P. 50(c). The jury's verdict was clearly contrary to the weight of the evidence as set forth above and a seriously erroneous result. *See generally Bevevino v. Saydjari*, 574 F.2d 676, 683–85 (2d Cir. 1978); 6A Moore's Federal Practice, ¶ 59.08[5], at 59–160—59–161 (1973). The master mechanic position under the contract called 520B, the post Rodgers refused,

required a master mechanic only until December 17, 1980. Moreover, the record is undisputed that Rodgers did not take proper steps to mitigate his damages, including his rejection of Messinger's offer to place him as an operating engineer, facts which could not have been considered by the jury in light of their award, contrary to their instructions.

In light of the grant of the motion for JNOV the plaintiff's motion to amend the judgment to include an award for attorneys' fees is denied.

Submit judgment on notice within ten (10) days.

IT IS SO ORDERED.