**FILMWAYS PICTURES, INC., Plaintiff,**

v.

**MARKS POLARIZED CORPORATION, Defendant.**

**No. 81 Civ. 8133(MEL).**

United States District Court, S.D. New York.

Dec. 14, 1982.

Linden & Deutsch, New York City, for plaintiff.

Handal, Meller & Morofsky, New York City, for defendant; Anthony H. Handal, Paul B. Morofsky, New York City, of counsel.

LASKER, District Judge.

This action arises from the distribution of a three-dimensional ("3–D") motion picture, "Comin' at Ya." Filmways Pictures, Inc. ("FPI") the film's distributor, approached Marks Polarized Corp. ("Marks") on or about April 1, 1981 for the purpose of obtaining from Marks special projection and viewing devices necessary for 3–D films. The subsequent course of negotiations between the parties is a matter of dispute. Four contracts were drafted; none was ever executed.

However, some agreement or understanding between the parties was apparently reached and Marks began to manufacture the equipment for "Comin' at Ya."

Marks contends that it understood the agreement to provide that Marks would do the manufacturing only if FPI paid for at least part of the costs and only if FPI was willing to recommend Marks and only Marks to the exhibitors. Marks further contends that as a result of FPI's delays, the possibilities of Marks' earning a profit on the venture became highly attenuated, and, at best, Marks hoped to break even on the transaction. In addition, Marks expected to have a larger inventory of adapters, financed by FPI, for its trouble. (Affidavit of Mortimer Marks, ¶ 17).

FPI, by contrast, attributes the difficulties to Marks. It asserts that the parties had a definite agreement as to Marks' duties to manufacture the equipment and to pay commissions to FPI for the rental income that Marks expected to receive from the exhibitors. FPI contends that problems arose because of Marks' financial difficulties, which necessitated FPI's advancement of funds to Marks' suppliers to pay for the raw materials for the equipment.

Marks replies that the "advances" to its suppliers were not agreed to by Marks; to the contrary, FPI bypassed Marks, and made commitments in its name, without authorization from Marks. (Affidavit of Mortimer Marks, ¶¶ 20, 21).

FPI moves pursuant to Fed.R.Civ.Pr. 56 for summary judgment on two of its claims for relief: the sixth claim, which seeks specific performance of the duty to render "an accounting of the amounts due and owing from defendant Marks to plaintiff FPI for commissions on the sale of viewers and on the lease of lenses," (Complaint ¶ 57) and the fourth claim, which requests the return of forty lenses which "are the property of the plaintiff FPI and which were shipped to Marks in connection with the motion picture." (Complaint ¶ 44). FPI also moves pursuant to Fed.R.Civ.Pr. 12(b)(6) to dismiss Marks' Second through Eighth Counterclaims.

### I. FPI's Motion for Summary Judgment

FPI contends that each of the four draft agreements provides that Marks is obligat-

ed to render an accounting to FPI for all commissions received in connection with leasing of lenses to the exhibitors. In the alternative, FPI argues that even if none of the written agreements controls (none of the written agreements was executed) there is an implied contractual agreement to account because FPI made advances to Marks' suppliers pursuant to an understanding which included the duty to render an accounting.

Marks answers that an accounting is unavailable because the terms of the agreement are disputed and uncertain. Marks contends that no agreement as to terms was ever reached:

> "I understand that the word 'agreement' means 'a coming together of the minds.' There was never any 'coming together.' Each time I received a written proposal it was inconsistent with our prior discussions."

(Affidavit of Mortimer Marks, ¶ 28).

As for the advances to Marks' suppliers, Marks denies its obligation to pay for them, on the grounds that Marks did not authorize them.

■ A brief perusal of the four draft contracts bears out Marks' contention that the terms of their understanding, whatever it was, are, at this point in the litigation, too uncertain to warrant the order of an accounting. The first draft appears to require Marks to pay a certain amount per theatre per week. The second provides in addition for certain sums to be paid from the lease income, up to $55,000, to cover an advance (which Marks contends it never received). The third draft specifies a division of lease income between Marks and FPI after deduction of certain costs, and the fourth adds a requirement that Marks reimburse FPI for sums advanced by FPI to Marks' suppliers. To allow an accounting at this stage would be premature since the terms of the agreement which would set the parameters of the accounting have not yet been determined. While it would appear from the allegations of the complaint that FPI is entitled to learn the details of Marks' financial transactions with the exhibitors, those facts can be unearthed through the regular discovery process. Accordingly, the motion for summary judgment on the sixth claim for relief is denied.

■ As to the fourth claim, FPI contends that there had always been a clear understanding between the parties that the lenses provided by FPI to Marks are and would continue to be the property of FPI, to be used by Marks only in connection with "Comin' at Ya." Marks does not dispute FPI's statement of the parties' understanding concerning the lenses, but merely asserts that it spent approximately $8,000 in repairing the lenses.

The $8,000 repair costs may provide the basis for a claim by Marks against FPI; however, "in an action for replevin, the issue is strictly whether plaintiff or defendant has the superior possessory right." *Honeywell Information Systems, Inc. v. Demographic Systems, Inc.,* 396 F.Supp. 273, 275 (S.D.N.Y.1975). While there are circumstances in which one who repairs an item retains an interest in the item in the form of a mechanic's lien or otherwise, Marks does not indicate that any such circumstances are present here, and, accordingly, the ordinary rules for recovery of chattels, as set forth in *Honeywell,* are appropriate.

The motion for summary judgment is denied as to the sixth claim and granted as to the fourth claim.

## II. *FPI's Motions to Dismiss Marks' Counterclaims*

### 1. *Counterclaim # 2: The Lanham Act*

■ Marks' claim under the Lanham Act, 15 U.S.C. § 1125(a), arises from an advertisement placed by FPI in the June 3, 1981 issue of *Variety,* a newspaper serving the entertainment industry. The advertisement is for "Comin' at Ya," and displays a picture of a 3–D viewer. Marks contends that the viewer pictured is its viewer and that the viewer has acquired a secondary meaning.

The Lanham Act protects against false designations of origin. The claim fails because the advertisement did not falsely designate the origin of the viewer pictured—it did not designate any origin at all.[1] The advertisement did not purport to be promoting viewers—it was promoting a motion picture. The advertisement does not suggest or intimate in any way that FPI is claiming ownership of the viewers pictured. It does not create confusion as to the source of the viewers; it simply fails to indicate their source. Because we can determine from the face of the advertisement that it does not create any *confusion* "as to the source of the goods in question" *McGregor-Doniger Inc. v. Drizzle, Inc.,* 599 F.2d 1126, 1131 (2d Cir.1979), the counterclaim under the Lanham Act is dismissed.

### 2. Counterclaim # 3: Trade Secrets

The third counterclaim alleges that FPI misappropriated confidential trade secret information of Marks. At oral argument, counsel for Marks explained that the bases for the third counterclaim are the acts alleged in the affidavit of Mortimer Marks, submitted in opposition to FPI's motion for summary judgment.

In his affidavit, Marks states:

"In a further attempt to insure the plaintiff's successful distribution of the Motion Picture, defendant Marks even went to the extent of telling a number of its trade secrets to its competitor in order to enable its competitor to manufacture acceptable polarizing film for viewers."

(Affidavit of Mortimer Marks, ¶ 23). Later, Marks states that FPI took advantage of Marks' good faith in disclosing its trade secrets to its competitors, and began ordering from the competitors instead of from Marks. (*Id.,* ¶¶ 25, 26).

Thus, the claim is not that FPI used or disclosed Marks' trade secrets, but that FPI induced Marks to divulge its *own* trade secrets to its competitors. While this may state a claim under the doctrine of unfair competition, see *infra,* no case has been

cited, nor is any known to the Court, in which a claim has been stated for expropriation of trade secrets in circumstances in which the plaintiff voluntarily disclosed his own secrets to third persons. Accordingly, the motion to dismiss the third counterclaim is granted.

### 3. Counterclaim # 4: Prima Facie Tort

The fourth counterclaim is based on the New York doctrine of the prima facie tort. The doctrine makes actionable an injury by the acts of a defendant which are motivated solely by malice. However, if the defendant's actions were motivated partly by malice and partly by the defendant's own pecuniary interest, a claim is not stated under the prima facie tort doctrine. *Korry v. International Tel. & Tel.,* 444 F.Supp. 193 (S.D.N.Y.1978).

Marks does not claim that malice was FPI's sole motivation. Rather, the fourth counterclaim states that the acts of FPI

"were part of an overall plan ... to intentionally inflict injury upon Marks ... whereby Marks would be rendered incapable of continuing in business *and defendants would obtain benefits by virtue of its arrangements with said coconspirators.*"

(Emphasis added).

Marks has failed to plead the necessary elements of a prima facie tort, and the motion to dismiss the claim is granted.

### 4. Counterclaim # 5: Unfair Competition

Marks' counterclaim under the New York common law of unfair competition is based on the same facts as the tort claims outlined above.

Unfair competition is a "capacious" doctrine. *Roy Export Co. v. Columbia Broadcasting System, Inc.,* 672 F.2d 1095, 1105 (2d Cir.1982):

---

1. A copy of the advertisement has been submitted by plaintiff in connection with the mo-  tion. (Attachment to Letter of Anthony H. Handal, dated July 30, 1982).

"It has been broadly described as encompassing 'any form of commercial immorality,' ... or simply as 'endeavoring to reap where [one] has not sown,' ...; it is taking 'the skill, expenditures and labors of a competitor,' and 'misappropriati[ng] for the commercial advantage of one person ... a benefit or 'property' right belonging to another.'"

*Id.* at 1105 (citations omitted).

Marks' contention that FPI induced it to disclose its trade secrets to its competitors in order to bypass Marks and deal directly with the competitors fits within the category described by *Roy Export* as "commercial immorality:" endeavoring to reap where one has not sown by misappropriating the skills and labors of another. The motion to dismiss the fifth counterclaim is denied.

### 5. *Counterclaim # 6: Tortious Injury*

■ The sixth counterclaim concerns an alleged assault by one of FPI's employees upon one of Marks' employees. FPI contends that a corporation cannot be the victim of an assault.

Marks argues that it has suffered damages by the assault in terms of the morale of its working staff. While FPI may be correct in its assertion that only a human being can be the direct victim of an assault, damages to a corporation may be a foreseeable consequence of an assault upon a person, particularly where, as here, the alleged assault is upon an employee which takes place in the employer's office during the working day.

The motion to dismiss the sixth counterclaim is denied.

### 6. *Counterclaim # 7: Patent Infringement*

■ The seventh counterclaim asserts that FPI induced one of Marks' competitors, Stereovision, to infringe Marks' patent for projector adapters. The claim is · for "contributory infringement:" inducing another to infringe. 35 U.S.C. § 271(b).

FPI contends that Marks has failed to allege that FPI intended Stereovision to infringe Marks' patent, and that intention is an essential element of a claim for contributory infringement. Marks responds that Stereovision's adapters infringe Marks' patent and that FPI's recommendation that exhibitors use Stereovision adapters therefore constitutes contributory infringement.

Intent is a necessary element of contributory infringement

"As contributory infringement ... is intentional aid or cooperation in transactions which collectively constitute complete infringement ..., 3 Walker, Patents § 507, p. 1764 (Deller ed. 1937), the intent and purpose of the Defendant is of critical importance."

*Fromberg, Inc. v. Thornhill,* 315 F.2d 407, 414 (5th Cir.1963). The counterclaim for contributory infringement is dismissed for failure to plead intent, without prejudice to amendment of the complaint to allege intent, if such an amendment can be made *in good faith.*

### 7. *Counterclaim # 8: Monopolization*

■ Marks alleges that FPI attempted to monopolize the market for 3–D motion picture equipment by, *inter alia,* attempting to bankrupt Marks and acquire a permanent interest in the company. Again, Marks has failed to plead the essential elements of the cause of action.

In order to plead a claim for monopolization under § 2 of the Sherman Act, 15 U.S.C. § 2, a plaintiff must allege that the defendant possesses monopoly power in the relevant market. *United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778. Similarly, a cause of action for attempted monopolization requires an allegation that the defendant has a " 'dangerous probability of success' in monopolizing a given product market." *Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.,* 614 F.2d 832, 841 (2d Cir.1980), *citing* 345 U.S. 594, 626, 73 S.Ct. 872, 890, 97 L.Ed. 1277 (1953).

The complaint does not indicate that FPI possesses any power in the market for 3–D motion picture equipment. To the contrary, it would appear from the allegations

of the plaintiff that FPI is not even in the business of manufacturing or selling the subject equipment.

The antitrust claim is dismissed.

\* \* \*

FPI's motion for summary judgment is denied as to the sixth claim and granted as to the fourth claim. FPI's motion to dismiss Marks' counterclaims is granted as to counterclaims two, three, four, seven and eight and denied as to counterclaims five and six. The dismissal as to counterclaim seven is without prejudice.

It is so ordered.