DEMALCO LTD., Plaintiff,

v.

C. Elvin FELTNER, Jr., Defendant.

No. 83 Civ. 6817.

United States District Court,
S.D. New York.

July 17, 1984.

---

Howard Gotbetter, New York City, for plaintiff.

Perles & Albert, New York City, for defendant; David A. Beale, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Defendant moves to dismiss plaintiff's amended complaint pursuant to Fed.R.

Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, and pursuant to Fed.R.Civ.P. 9(b) for failure to plead fraud with particularity. Alternatively, defendant seeks summary judgment. The motion to dismiss for failure to state a claim is granted.

The allegations of the amended complaint, which are accepted as true for the purposes of this motion, may be summarized as follows: On October 8, 1971, plaintiff acquired the right to distribute and exploit the motion picture "Satanik" in the United States and a few other countries for fifteen years, until October 8, 1986. At that time, defendant apparently was a vice president of plaintiff, and had knowledge of the agreement conferring the fifteen year license to plaintiff. On December 6, 1971, plaintiff, by the defendant as its officer, assigned its rights to "Satanik" for a ten-year period to Monroe Rapaport. Rapaport in turn assigned his rights, but in April, 1979, Rapaport's assignee declared bankruptcy. Rapaport then sought to assign the right to the film for the remainder of its ten-year license to Lorimar Distribution International, Inc. ("Lorimar"). However, Lorimar was interested in the film only for a period longer than the time remaining on Rapaport's license.

In order to sell his rights to Lorimar, the complaint alleges, Rapaport met with the defendant and concocted a plan whereby the defendant would write a letter to Rapaport falsely stating that Rapaport's license extended for the same period of time as plaintiff's fifteen-year license. Although Rapaport did not begin his negotiations with Lorimar until the summer of 1980, it was part of the alleged scheme that the letter from defendant to Rapaport would be back-dated to February 12, 1980, and that Rapaport would use the letter to document his rights to the film and thereby

convince Lorimar to enter into a licensing agreement extending to October 8, 1986. Defendant was to receive part of the proceeds of the license for his part in the alleged scheme.

According to the complaint, in December, 1980, armed with the letter from defendant, Rapaport licensed the film to Lorimar for a term expiring October 8, 1986. Plaintiff learned of the licensing agreement in the spring of 1982, and notified Lorimar that Rapaport had no rights to the film after December 6, 1981. Lorimar then cancelled its agreement with Rapaport. Subsequently, Rapaport brought an arbitration proceeding against plaintiff for damages he allegedly sustained when Lorimar cancelled the agreement. The arbitration was decided against Rapaport, for plaintiff.

Plaintiff claims that the scheme it describes prevented it from being able to license the film since December 6, 1981, and forced it to incur legal fees and expenses for the arbitration. Plaintiff seeks to recover the alleged damages from defendant upon two theories. First, it claims that defendant's participation in the alleged scheme constitutes a "conspiracy to defraud" the plaintiff. Second, plaintiff claims that by his acts, defendant "intentionally procured the breach of [the] contract [between plaintiff and Rapaport] by Rapaport . . . ."

## CONSPIRACY TO DEFRAUD:

■ It is well settled in New York that "civil conspiracy to commit fraud, standing alone, is not actionable."[1] Instead, the gravamen of a claim of conspiracy is the underlying independent tort, and if the independent tort has not been adequately pleaded, the conspiracy claim will also fail.[2] Plaintiff has not adequately pleaded the five essential elements of fraud: representation of a material existing fact, falsity,

**1.** *Cullen v. BMW of North Am., Inc.,* 490 F.Supp. 249, 254 (E.D.N.Y.1980); *Ghazoul v. International Management Servs., Inc.,* 398 F.Supp. 307, 311–12 (S.D.N.Y.1975).

**2.** *Danahy v. Meese,* 84 A.D.2d 670, 672, 446 N.Y. S.2d 611, 614 (4th Dep't 1981); *Cunningham v.*

*Hagedorn,* 72 A.D.2d 702, 422 N.Y.S.2d 70 (1st Dep't 1979); *Mastro Jewelry Corp. v. St. Paul Fire and Marine Ins. Co.,* 70 A.D.2d 854, 418 N.Y.S.2d 44 (1st Dep't 1979); *Abkco Indus., Inc. v. Lennon,* 52 A.D.2d 435, 384 N.Y.S.2d 781 (1st Dep't 1976).

scienter, deception and injury.[3] The sole basis of its claim of fraud is a letter sent by the defendant to Rapaport, dated February 12, 1980, which reads in pertinent part:

Regarding the film that you purchased from Tedor Hreljanovic and me in the early 1970's entitled "Satanik", this is to confirm that it was my understanding at the time that your license would run concurrent with the rights we held in the film. I do not recall what the expiration date of our rights was, but it was my understanding that your license would expire upon that date. I regret that I do not have a copy of the original agreement but I do hope that my recollection is of assistance to you in this matter.

Plaintiff has not alleged that anyone was deceived by the letter. Plaintiff was not the recipient of the letter. It could not have been deceived by a letter it did not receive. To the contrary, plaintiff was steadfast in its contention that Rapaport's license was limited to ten years, and promptly took action when it learned that Rapaport was attempting to exploit the film after the ten years had expired. Rapaport was not deceived—he allegedly was part of the scheme. Nor does the complaint allege that Lorimar actually and justifiably relied upon the letter. The letter made it explicitly clear that defendant was relying upon his recollection of events some nine years past, and noted that he did not have a copy of the original agreement.

Plaintiff attempts to escape his failure to plead the necessary elements of fraud by arguing that its complaint doesn't allege a conspiracy to commit fraud, but rather, under the decision in *Chase Manhattan Bank, N.A. v. Perla*,[4] alleges a "combination to defraud or cause injury to persons or property which results in damage to ... plaintiff, and ... [was] committed with the specific intent to cause injury to the plaintiff."[5] The claim recognized by *Perla* is one for conspiracy to commit a *prima facie* tort.[6] The doctrine of *prima facie* tort "makes actionable an injury by the acts of a defendant which are motivated solely by malice."[7] "[M]otives of profit, economic self-interest or business advantage are by their terms not malicious, and their presence, even if mixed with malice or personal animus, bars recovery under *prima facie* tort."[8] Plaintiff does not allege that malice was defendant's sole motivation for the alleged scheme. Indeed, the complaint states that one purpose of the alleged scheme was to give Rapaport an opportunity to "sell and license the Film to Lorimar until October 8, 1986 for significant consideration," and that defendant and Rapaport had agreed to share the licensing fee from Lorimar. Thus, plaintiff has failed to plead the necessary elements of both fraud and conspiracy to commit a *prima facie* tort, and its first claim must be dismissed for failure to state a claim upon which relief can be granted.[9]

**3.** *Samuels v. Eleonora Beheer, B.V.*, 500 F.Supp. 1357, 1361 (S.D.N.Y.1980), *aff'd*, 661 F.2d 907 (2d Cir.1981).

**4.** 65 A.D.2d 207, 411 N.Y.S.2d 66 (4th Dep't 1978).

**5.** *Id.*, 65 A.D.2d at 211, 411 N.Y.S.2d at 69 (*quoting Wegman v. Dairylea Coop., Inc.*, 50 A.D.2d 108, 114, 376 N.Y.S.2d 728, 736 (4th Dep't 1975), *appeal dismissed*, 38 N.Y.2d 918, 382 N.Y.S.2d 979, 346 N.E.2d 817 (1976)).

**6.** *See Special Event Entertainment v. Rockefeller Center, Inc.*, 458 F.Supp. 72 (S.D.N.Y.1978); *Wegman v. Dairylea Coop., Inc.*, 50 A.D.2d 108, 376 N.Y.S.2d 728 (4th Dep't 1975), *appeal dismissed*, 38 N.Y.2d 918, 382 N.Y.S.2d 979, 346 N.E.2d 817 (1976).

**7.** *Filmways Pictures, Inc. v. Marks Polarized Corp.*, 552 F.Supp. 863, 867 (S.D.N.Y.1982).

**8.** *Rodgers v. Grow-Kiewit Corp.*, 535 F.Supp. 814, 816 (S.D.N.Y.), *aff'd*, 714 F.2d 116 (2d Cir. 1982).

**9.** *See Crimpers Promotions, Inc. v. Home Box Office, Inc.*, 554 F.Supp. 838, 849 (S.D.N.Y.1982), *aff'd*, 724 F.2d 290 (2d Cir.1983), *cert. denied*, ___ U.S. ___, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984); *Filmways Pictures*, 552 F.Supp. at 867; *Rodgers*, 535 F.Supp. at 816 and cases cited therein; *Korry v. International Tel. & Tel. Corp.*, 444 F.Supp. 193, 195 (S.D.N.Y.1978); *Gross v. Newburger, Loeb & Co.*, 103 Misc.2d 417, 421, 426 N.Y.S.2d 667, 672 (Sup.Ct.1980), *modified on other grounds*, 85 A.D.2d 709, 445 N.Y.S.2d 830 (2d Dep't 1981).

TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS:

■ In order to state a claim for tortious interference with the contract between Rapaport and plaintiff, the complaint must allege: the existence of a valid contract of which defendant has knowledge; the defendant's intentional procuring of a breach of that contract; and damages.[10] In addition, plaintiff must show that "but for the unlawful actions of defendant the contract would have been performed." [11] Plaintiff has not alleged the essential elements. First, plaintiff has not alleged that the "contract" allegedly breached was a valid contract. Indeed, the thrust of plaintiff's complaint is that there was no valid contract between Rapaport and plaintiff after December 6, 1981, because the license granted to Rapaport expired at that time. Because the contract between Rapaport and plaintiff expired by its own terms, Rapaport's attempt to exploit the film after its expiration was, if anything, an infringement of plaintiff's license, not a breach of contract.[12]

In addition, it must be noted that the complaint alleges only that defendant "intentionally procured breach of such contract by Rapaport by causing its attempted extension for nearly five years beyond its expiration date ...." The complaint makes clear that plaintiff thwarted the attempted extension by notifying Lorimar that Rapaport did not have rights to the film. Thus, plaintiff alleges not a breach of contract but an *attempted* breach. Further, plaintiff has not alleged that but for defendant's acts, Rapaport would not have attempted to "breach" the license agreement by assigning the rights to the film to Lorimar. There is no allegation, for example, that Lorimar relied upon the defendant's letter to Rapaport when it agreed to purchase Rapaport's purported rights to the film.

Finally, the Court notes that many decisions have held that the intent required for tortious interference with contract is similar to that required for a *prima facie* tort, that is, that defendant must act with "exclusive malicious motivation." [13] As noted previously, plaintiff has not alleged the required intent.

Accordingly, plaintiff's second claim fails to state a claim upon which relief can be granted. Plaintiff amended its complaint after receiving defendant's motion to dismiss, but still failed to plead the necessary elements of its claims. The complaint, therefore, is dismissed with prejudice.

So ordered.

---

**10.** *Israel v. Wood Dolson Co.,* 1 N.Y.2d 116, 120, 151 N.Y.S.2d 1, 5, 134 N.E.2d 97, 99 (1956).

**11.** *Special Event Entertainment v. Rockefeller Center, Inc.,* 458 F.Supp. 72, 78 (S.D.N.Y.1978); *Bryce v. Wilde,* 39 A.D.2d 291, 333 N.Y.S.2d 614 (3d Dep't), *aff'd,* 31 N.Y.2d 882, 340 N.Y.S.2d 185, 292 N.E.2d 320 (1972).

**12.** *See Nifty Foods Corp. v. Great Atlantic & Pac. Tea Co.,* 614 F.2d 832, 837 (2d Cir.1980); *Roer v.*

*Cross County Medical Center Corp.,* 83 A.D.2d 861, 441 N.Y.S.2d 844 (2d Dep't 1981).

**13.** *See, e.g., Strobl v. New York Mercantile Exec.,* 561 F.Supp. 379, 386 (S.D.N.Y.1983); *Sadowy v. Sony Corp.,* 496 F.Supp. 1071, 1080 (S.D.N.Y. 1980); *Williamson, Picket, Gross, Inc. v. 400 Park Ave. Co.,* 47 N.Y.2d 769, 417 N.Y.S.2d 460, 391 N.E.2d 296 (1979).