**FALCON TANKERS, INC., a Delaware corporation, Plaintiff,**

v.

**LITTON SYSTEMS, INC., a Delaware corporation, Defendant and Third-Party Plaintiff,**

v.

**WORTHINGTON CORPORATION, a Delaware corporation, Third-Party Defendant.**

Superior Court of Delaware,
New Castle.

Dec. 21, 1972.

James M. Tunnell, Jr., and Lawrence C. Ashby, of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff. Houston H. Wasson, of Lovejoy, Wasson, Lundgren & Ashton, New York City, of counsel.

Richard F. Corroon, and Richard E. Poole, of Potter, Anderson & Corroon, Wilmington, for defendant and third-party plaintiff.

William Prickett, and Roger P. Sanders, of Prickett, Ward, Burt & Sanders, Wilmington, for third-party defendant.

## OPINION

CHRISTIE, Judge.

Falcon Tankers, Inc., a Delaware corporation contracted with Litton Systems, Inc., also a Delaware corporation, for Litton to design, construct and sell to Falcon a tanker to be known as the "Falcon Lady". The design was prepared by Litton and approved by Falcon and the ship was built. Upon completion of the construction, Litton delivered the ship in accordance with the terms of the contract. However, difficulties were experienced with the ship's ballast and cargo discharge system during its first and second voyages. As a result of failures in the discharge system a dispute arose between the parties, and Falcon and Litton submitted two preliminary issues to an arbitration panel. These two issues may be summarized and restated as follows:

1. Did the cargo and ballast discharge system, as designed and installed (includ-

ing changes made to pumps brought about by pump breakdowns) on the *Falcon Lady*, meet the requirements of the Construction Contract and the Specifications for the vessels, without an additional auxilary "stripping" system to remove cargo and water?

2. Is the separate stripping system, which was finally actually installed in the *Falcon Lady*, in excess of the requirements of the Construction Contract and the Specifications for the vessels and if so, what part of the cost, if any, should be born by Falcon Tankers, Inc.?

It is to be noted that if the issues submitted to arbitration had been fully resolved by arbitration many of the issues raised in this suit would not thereby have been resolved since such issues had not been put in arbitration. Only in this suit does Falcon seek to recover the additional damages it says it suffered as a consequence of the breakdowns over and above the costs of correcting the alleged defects.

In any event, the arbitration panel heard testimony only as to the first question, and held that the cargo and ballast discharge system did not meet the requirements of the contract. The second question was never decided since Falcon chose to initiate the present suit and Litton chose to withdraw its defense that Falcon was required to arbitrate under the terms of the compulsary arbitration agreement contained in the contract between Litton and Falcon.

Falcon, in this suit, seeks to recover very substantial consequential damages alleged to have been caused by design defects in the cargo and ballast discharge system installed by Litton in the "Falcon Lady". The Falcon complaint contains three counts. Count I seeks recovery based upon a breach of implied warranties by Litton as to the "Falcon Lady's" merchantability and fitness for her intended purpose. Count II is based upon a contention that Litton breached an alleged express warranty that the ship, as designed and built, would be fit for its intended purpose as a

vessel to carry Grade "B" petroleum and would meet all MSC requirements. Count III is based upon Litton's alleged negligence in failing to exercise reasonable care in the selection or design of the cargo pumps and in failing adequately to test and inspect the pumps.

Litton originally pleaded two affirmative defenses, the first of which was based on an arbitration clause found in the contract between Falcon and Litton. This clause, in relevant part, provided:

"Any dispute, difference or disagreement between Buyer and Seller arising out of the performance of this Contract shall promptly be referred to arbitration in New York City by an arbitrator selected jointly by the parties hereto . . . Any such arbitration shall be conducted in accordance with the laws of the State of New York and the rules of the American Arbitration Association."

Litton, however, has withdrawn this first defense and does not now rely thereon.

The second defense is based on a "guarantee clause" found in the same contract. This clause, as amended, reads in part as follows:

"(a) The Seller makes no guarantees or warranties, either expressed or implied, on the FM-furnished Pielstick System. Except for the Pielstick System, in the event that any defects in the original materials or workmanship in the Vessel (including machinery, materials, equipment, appurtenances and outfit embodied therein), other than those defects which are due to wear and tear or misuse and other than defects in items of Inventory or Equipment furnished by the Buyer, are discovered within six (6) months after delivery of the Vessel to the Buyer, such defective parts shall be replaced or the defects remedied by the Seller at the Seller's cost, but the liability of the Seller in this respect is not to extend beyond the actual replacement or remedy of such defective parts and the Seller

shall not be liable for any damage to the Vessel, its equipment or cargo, damage to other property of the Buyer, or for personal injuries to any persons, or for any consequential damages any of which damages from whatsoever cause or however originating may have been caused by or are alleged to have been caused by any such defect in material or workmanship.

The provisions set forth herein as to the liability of the Seller hereunder are to also apply to each and every item of material and workmanship furnished by subcontractors or vendors in the Seller's performance of this Contract."

Litton contends that the guarantee clause prohibits the recovery of the consequential damages which Falcon seeks to recover in this suit. In short, Litton contends that it is clear from the language of the guarantee clause that the express warranty found therein, which limits damages to replacement or remedy of defective parts and disclaims liability for consequential damage, applies to and limits liability on design defects and was in lieu of all other express or implied warranties. Further, Litton argues that this clause also specifically prohibits any recovery of consequential damages based on a negligence theory.

Litton, in turn, filed a third-party complaint against Worthington Corporation, a Delaware corporation, which is alleged to have designed and manufactured the pumps Litton installed in the "Falcon Lady". In addition to its claim against Worthington with respect to the allegations of Falcon's complaint, Litton asserted four additional claims against Worthington. In these additional claims, Litton seeks: recovery of a sum spent for repairs and alterations to the Falcon Lady as a result of difficulties allegedly encountered in discharging her cargo; recovery for pumps and piping connections on other Hulls known as No. 1163, 1164 and 1165; recovery for design and construction of pumps to be installed in the "Marine Chemist"; and damages in connection with equipment furnished by Worthington for Hulls No. 1168, 1169, 1170 and 1171.

Worthington in turn, has filed a motion to dismiss Falcon's complaint and Litton's third-party complaint. The grounds of the motion are Litton's defenses against Falcon based on the arbitration clause and the guarantee clause of the contract and an alleged misjoinder of claims in the third-party complaint. This opinion contains the Court's rulings on Worthington's motions to dismiss.

Worthington's argument as to the arbitration clause, generally stated, is that such a clause is irrevocable, cannot be waived, and can as a result be asserted by Worthington so as to force Falcon and Litton back into arbitration.

Worthington concurs in Litton's argument as to the guarantee clause.

Finally, Worthington argues that the additional claims of the third-party complaint must be dismissed as improperly joined.

Thus, three major issues are raised by the motions to dismiss the Falcon and Litton complaints. The first is whether Worthington has standing to insist on arbitration, as provided in the arbitration clause, in light of the fact that neither of the contracting parties (Falcon and Litton) seeks further arbitration. The second is whether the language used in the guarantee clause limits damages so as to preclude damages for design defects (as opposed to defects in materials and workmanship) and precludes damages caused by Litton's negligence. The third issue is whether Worthington's motion to dismiss the additional counts of the third-party complaint should be granted for improper joinder. Each will be considered in their respective order.

However, before considering these issues, it must be noted that the contract contains a clause whereby the contracting parties made what is known as a choice of law. It provides that the contract should

be governed by the laws of the United States of America and of the State of New York.

In regard to the validity of such provisions, Chief Justice Layton once noted:

"Contracting parties, within definite limits, have some right of choice in the selection of the jurisdiction under whose law their contract is to be governed."

Wilmington Trust Co. v. Wilmington Trust Co., 26 Del.Ch. 397, 406, 24 A.2d 309, 313 (Del.Supr.1942)

The Court held that an expressed intent by a donor of a trust should be respected by the courts if the selected jurisdiction has a material connection with the transaction.

The provisions of Delaware's Uniform Commercial Code also allows for such a choice of law by the parties to a sales transaction. See 5A Del.C. § 1–105(1).

■ This Court will recognize the choice of law provisions of the contract and will look to the laws of the United States of America and of the State of New York.

I

As noted above, the first issue is whether Worthington has standing under the arbitration clause of the contract to compel Falcon and Litton to arbitrate issues which they have in effect mutually agreed to submit to this Court. In support of its contention that it has standing to raise this issue, Worthington argues: (a) that an arbitration agreement is "irrevocable" under the applicable New York and United States laws; (b) that Falcon and Litton have waived any right which they might have had to agree not to submit the matter to arbitration by their submission of one such question to the arbitration panel; (c) that Worthington is a third-party beneficiary of the contract between Falcon and Litton since Worthington knew of the contract provisions be-

tween Falcon and Litton and relied on such; and (d) that Worthington can under Civil Rule 14 raise any of the defenses which Litton has to Falcon's cause of action. I will consider these contentions in their respective order.

(a)

First, the meaning of the term "irrevocable" as used in the New York Arbitration Act must be considered. Worthington's contention is that once the parties to a contract have agreed that any dispute will be submitted to arbitration there is no way for them to revoke that agreement.

Such a reading of this term finds little support in law or reason. While it may be true that such an agreement is "irrevocable" in that it cannot be revoked by one party to the contract without the consent of the other party, such agreement does not prevent all the parties by mutual agreement from revoking such a provision.

Corbin discusses this point in the following clear language:

"Assuming that a valid arbitration agreement has been made and that an existing dispute is within its coverage, a party's right to such arbitration may be extinguished in various ways. It may be discharged, like any other contract right, by a mutual rescission. The Arbitration statutes do not deprive contractors of this power. At any stage of the proceedings, before or after the appointment of an arbitrator, even during the course of the arbitration proceeding itself, a mutual agreement of rescission will discharge the previously existing right to arbitration and will terminate the power of arbitrators already appointed." 6A Corbin on Contracts § 1443 at 432.

A similar result was reached in New York in Zimmerman v. Cohen, 236 N.Y. 15, 139 N.E. 764 (Ct.App.1923). It was there specifically held:

"While the Arbitration Law provides for the enforcement of arbitration agree-

ments, there is nothing in the law which prevents the parties agreeing between themselves to resort to any other method of settlement; the law does not bar the parties to the contract from coming into the courts of the state if they mutually choose to do so. The provision for arbitration was of no more binding force than any other provision of the contract. The Arbitration Law was passed to provide a means for enforcing an agreement to arbitrate; it did not otherwise change the law of contracts which is as applicable to such an agreement as to other terms and conditions. This provision, therefore, to arbitrate could have been modified by a subsequent agreement based upon a consideration, or waived or abandoned by the agreement or action of the parties. . . .

The word 'irrevocable', here used, means that the contract to arbitrate cannot be revoked at the will of one party to it, but can only be set aside for facts existing at or before the time of its making which would move a court of law or equity to revoke any other contract or provision of a contract. It does not mean that the agreement to arbitrate is irrevocable by the mutual agreement or consent of the parties." *Zimmerman, supra,* at 765–766.

■ The Court rules that an agreement to arbitrate disputes may be revoked by the mutual assent of all the parties thereto.

### (b)

■ Worthington's second contention is that Falcon and Litton have waived any right which they had to revoke the agreement to arbitrate as a result of having submitted some of the issues to arbitration. Counsel for Worthington have not cited any authority directly on point in support of this argument. I am of the opinion that Corbin is correct when he states that the parties to an arbitration agreement have the authority to mutually rescind an arbi-

tration clause even during the course of the arbitration proceeding itself. I hold that Falcon and Litton did not waive their right to revoke the arbitration clause by having submitted some of the issues in dispute to an arbitration panel.

### (c)

The next question is whether Worthington has standing to require that the arbitration clause be adhered to on account of its relationship to the parties and the subject matter of the contract. Worthington, in effect, argues that it should be considered as a third-party beneficiary to the contract between Falcon and Litton since it alleges that it knew of the arbitration clause and relied on such in contracting with Litton.

■ It should be noted that general contract rules apply as to who is entitled to the benefit of an agreement to arbitrate. Thus, a person must be a party to or in privity with a party to an arbitration agreement in order to invoke its provisions. See 17A C.J.S. Contracts § 515(4). Since the contract between Falcon and Litton contains no specific provision for enforcement by Worthington and there is no privity, it must be determined whether Worthington is, in any sense, a third-party beneficiary of the contract containing the arbitration agreement.

The general law concerning third-party beneficiaries provides for various persons who are recognized as having enforceable rights created in them by a contract to which they are not parties and for which they gave no consideration.

■ If Worthington is to be considered a third-party beneficiary with standing to enforce the contract, it must be as what is known as a donee beneficiary. However, Worthington cannot be such a third-party beneficiary in the legal sense here significant since neither Falcon nor Litton in any way expressed an intent or purpose to confer a benefit upon Worthington. In fact,

the intent of Falcon and Litton is clearly the opposite. The arbitration clause in the contract is by its very terms, made applicable only to "any dispute, difference or disagreement between *Buyer and Seller* arising out of the performance of *this Contract*" (Emphasis added). The clause is not broad enough to encompass Worthington. In accordance with this expressed intent, I rule that Worthington is not a third-party beneficiary. See Resinol v. Valentine Dolls, Inc., 14 A.D.2d 853, 220 N.Y.S.2d 884 (1961) for the rule that the parties to the contract must have clearly and definitely intended it to be for the benefit of the third person to enable him to sue thereon.

Furthermore, absent such an intent, Worthington cannot create in itself any rights as a beneficiary by acting in reliance on the contract. The fact that Worthington knew of the arbitration provision in the contract between Falcon and Litton and allegedly relied on such in its own contracting with Litton cannot serve to alter the relationship of the original parties to the arbitration agreement or to add a party thereto which was not envisioned by the terms of the contract or by the intention of the signatories thereto.

Worthington, in support of its contention, cites Louis Michel, Inc. v. Whitecourt Construction Co., 264 N.Y. 23, 189 N.E. 767 (Ct.App.1934). It was there held that a surety, not a party to a contract providing for arbitration, had standing to compel arbitration on the underlying contract before the surety's liability was determined in court. The case is distinguishable, however, since the surety's liability therein was specifically conditioned on a finding of liability under the contract requiring arbitration. No such specific condition is found in the present case.

### (d)

Finally, the Court must consider whether Worthington may raise Litton's defense of arbitration and award under the rule which allows a third-party defendant to raise defenses which the defendant and the third-party plaintiff have to plaintiff's claim even though in this case Litton has withdrawn such defense. The basis of this argument is found in Civil Rule 14 which provides in relevant part:

" . . . The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim. . . . "

Worthington argues that the defense of arbitration and award was available to Litton and that it can, therefore, properly raise such defense under Civil Rule 14.

Falcon, in opposition to this argument, submits that the right to invoke the arbitration clause as an objection to proceedings in this Court is a personal defense (analogous to objections to personal jurisdiction, venue, etc.) which, having been waived by Litton, is now unavailable to Worthington.

In support of this, Falcon cites Brandt v. Olson, 179 F.Supp. 363 (N.D.Iowa 1959) which dealt with the question of venue. It was there held that the defense of improper venue was personal to the defendant and could not be asserted by the third-party defendant.

Professors Wright and Miller agree with the holding in the *Brandt* case, *supra,* insofar as it concerns defenses under Federal Rule 12 (which Delaware has adopted in its entirety as Civil Rule 12). They note that a third-party defendant may assert only those defenses that the third-party plaintiff has not waived under Rule 12(g) or Rule 12(h), but caution that such should not be an ironclad rule if the circumstances indicate collusion between the parties to the original action. 6 Wright and Miller, Federal Practice and Procedure § 1457, at 307.

Although the cited authority is not directly on point, it is my opinion that the reasoning behind Professors Wright's and Miller's comments should be extended so as

to find application to the affirmative defense here asserted under Civil Rule 8. Litton has waived any defense it may have had based on the arbitration clause. In view of the personal nature of the defense waived, the limited interests the arbitration clause was designed to protect, and the absence of collusion or other form of unfair play, the waiver is found to be binding as to Worthington.

As a result of the holding that Worthington has no standing to raise the arbitration agreement between Falcon and Litton as a defense, it becomes unnecessary to rule on the question raised by counsel concerning the public policy of Delaware in regard to the enforcement of arbitration agreements.

### II

As noted above, the second issue involves the scope of and extent of limitations contained in the guarantee clause found in the contract between Falcon and Litton. The parties do not dispute the fact that liability and remedies for breach of warranty can be limited by contract. The disputes concern: a) whether the express warranty as to "materials and workmanship" was in lieu of all other express or implied warranties so as to preclude damages for design defects, and b) whether tort liability was effectively disclaimed.

### (a)

As to the first issue, it should be noted that courts have repeatedly refused to extend so-called workmanship and material guarantees to cover defects in design. See Lombard Corporation v. Quality Aluminum Products Co., 261 F.2d 336 (6th Cir. 1958), and Water Works and Industrial Supply Company v. Wilburn, 437 S.W.2d 951 (Ct. App.Ky.1968). In the *Lombard* case, *supra,* the court noted that an implied warranty of fitness was not inconsistent with an express warranty as to materials and workmanship. *Supra,* 261 F.2d at 338. Likewise, the court in the *Water Works*

case, *supra,* rejected the defendant's argument that its express warranty with respect to materials and workmanship precluded the recovery of consequential damages on the theory of implied warranty since the language in the contract as to express warranties was not sufficient under —[sections 2–315 and 2–316 of the Uniform Commercial Code] to exclude the implied warranty. *Supra,* 437 S.W.2d at 955.

Section 2–316 of the Uniform Commercial Code, which has been enacted in New York (62½ McKinney's) provides the method for the exclusion or modification of warranties. It provides in relevant part:

"2–316 Exclusion or Modification of Warranties

(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'

"(3) Notwithstanding subsection (2)

  ·   ·   ·  , ·   ·   ·

(b) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him."

·  ·  ·

In the present instance, the only pertinent language found in the guarantee clause concerns "materials and workmanship". No mention is made as to defects in "design". In reviewing the clause as amended, I note that all warranties, ex-

press or implied, are disclaimed as to the FM-furnished Pielstick System. In the second sentence there is found an express warranty as to original materials and workmanship in the vessel and a limitation of liability in respect to such defects. The sentence, however, does not mention "design" and the express warranty as to materials and workmanship is not inconsistent with an express warranty as to design or implied warranties of merchantability or fitness so as to exclude such. Finally, there is no language, as found in the first sentence, which expressly disclaims all other express and implied warranties other than as to materials and workmanship defects.

The cases cited by Litton and Worthington are distinguishable in that therein the provisions limiting liability clearly disclaimed all other liability and were not limited to "materials and workmanship defects" as in the present case.

Litton and Worthington argue, however, that since the "Falcon Lady" was built in accordance with specifications and plans submitted by Falcon and since Falcon had a contractual right to inspect, the Court is required to grant the motion to dismiss at least as to the alleged implied warranties.

█ It is recognized that there may be situations when a buyer gives precise and complete specifications to the seller without relying on the seller in connection therewith or where a buyer has examined the goods before entering into the contract and under such circumstances implied warranties are sometimes deemed to be excluded. See Official Comment to Uniform Commercial Code § 2–316, 62½ McKinney's. On the present record, however, the Court denies the motion to dismiss since several factual issues are raised by these defenses.

Among these issues are questions as to the relationship of the alleged defects to any plans and specifications; the extent and nature of any reliance Falcon placed, or had a right to place on Litton's design, skill and knowledge; and whether the alleged defects were such as a reasonable examination ought to have revealed.

(b)

█ Finally, as to the alleged disclaimer of tort liability, I hold that the language used by the parties is not such as to preclude Litton's liability for its own negligence under circumstances which might be shown to exist under the allegations made in this case.

The New York decision in Willard Van Dyke Productions, Inc. v. Eastman Kodak Co., 12 N.Y.2d 301, 239 N.Y.S.2d 337, 189 N.E.2d 693 (1963) holds as the law of New York that contracts will be construed so as not to provide for immunity from liability for negligence unless the language clearly requires such a construction. Under this rule the question for this Court to determine is whether clear language disclaiming tort liability as to damages, including damages caused by defects in design, was included in the contract in question.

I find that no such language exists since, as noted above, the pertinent sentence concerns only damages resulting from defects in material and workmanship. Litton has thus effectively disclaimed tort liability only for damages from whatsoever cause or however originating which may have been "caused by or alleged to have been caused by any such *defect in material and workmanship*" (Emphasis added). No disclaimer of tort liability can be said to exist as to damages caused by Litton's alleged negligence in failing to exercise reasonable care in the selection or design of the cargo pumps or in failing adequately to test or inspect the pumps.

III

The final question on which this Court must rule involves Worthington's motion to

dismiss the other counts of Litton's third-party complaint. In this regard, it is noted that Worthington must concede that the first count of the third-party complaint has been properly brought under Superior Court Civil Rule 14 as a third-party claim. The additional counts allege causes of action remotely related to the third-party claim which Litton says it has against Worthington, but these counts do not qualify as third-party claims.

Once a proper third-party claim is found to have been stated, a comment by Professor Moore as to the meaning of Federal Rule 18(a) is determinative as to the issue of any other claims asserted by the third-party plaintiff. He states:

"Thus if a claim is properly asserted as . . . a third-party claim, then under Rule 18(a) . . . the . . . third-party claimant could join additional claims against the opposing party *even though these claims do not qualify as a* . . . *third-party claim under* . . . Rule 14." (Emphasis added). 3A Moore's Federal Practice, 18.04[4], p. 1877, footnote 4.

Just such a reading was given to Federal Rule 18 in Schwab v. Erie Lackawanna Railroad Co., 438 F.2d 62 (3rd Cir. 1971). It was there held that a third-party plaintiff may join with his proper third-party claim any other claims he has against the third-party defendant.

Worthington, however, attempts to limit the application of the holding in the *Schwab* case by pointing to certain language which the Court used limiting the basic third-party claim to "the same transaction or occurrence" and "the same set of facts" (438 F.2d at 70, 71). Worthington contends that a "same occurrence or transaction" test is thereby made applicable under Federal Rule 18 to other claims which

may be tacked on once a good third-party claim is properly asserted.

I do not read the *Schwab* decision, *supra,* to so hold. It seems to me that the Circuit Court of Appeals was using this limiting language in reference to the question of whether the Court had jurisdiction over the basic third-party claims asserted. There can be no question as to this Court's jurisdiction as to the basic third-party claim in the present case. It follows that the additional counts are properly brought and a "same transaction or occurrence" test would not be applicable under Federal Rule 18 or the corresponding Delaware Civil Rule 18.

Nothing said herein is meant to imply that the issues raised in these remotely related "other claims" asserted by Litton against Worthington must be tried at the same time as the basic third-party complaint. No opinion is expressed on that matter at this time.

\* \* \*

Litton's and Worthington's motions to dismiss Falcon's complaint will be denied. Litton has waived the right to arbitrate and Worthington is found to have no standing to invoke the agreement to arbitrate. The contract is found not to preclude Falcon from recovering consequential damages if they are shown to be caused by design defects in the Falcon Lady's cargo pumps. Falcon may be able to prove that it is entitled to recover such consequential damages upon proving the alleged breach of an express or implied warranty or actional negligence by Litton in the inspection or testing of the cargo pumps. Finally, Worthington's motion to dismiss counts of Litton's third-party complaint is denied since such are not found to be improperly joined under Civil Rule 18.

Counsel for plaintiff is requested to prepare an appropriate Order.