DERRY FINANCE N.V., a Netherlands Antilles corporation, Plaintiff,

v.

The CHRISTIANA COMPANIES, INC., a Delaware corporation, AARK Enterprises, Inc., a Delaware corporation, and AARK Enterprises, a New York partnership, Defendants.

The CHRISTIANA COMPANIES, INC., a Delaware corporation, Defendant, Cross-Plaintiff,

v.

AARK ENTERPRISES, INC., a Delaware corporation, and AARK Enterprises, a New York partnership, Defendants, Cross-Defendants.

Civ. A. No. 82–412–JLL.

United States District Court, D. Delaware.

Aug. 17, 1984.

See also, D.C., 555 F.Supp. 1043.

---

Lawrence C. Ashby of Ashby, McKelvie & Geddes, Wilmington, Del., and Jerry J. Strochlic and Stuart A. Krause of Sage, Gray, Todd & Simms, New York City, of counsel, for plaintiff.

R. Franklin Balotti and Samuel A. Nolen of Richards, Layton & Finger, Wilmington, Del., and William I. Goldberg of Antonow & Fink, Chicago, Ill., of counsel, for defendant The Christiana Companies, Inc.

Francis J. Murphy of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and Martin J. Schwartz and Arlene G. Dubin of Rubin, Baum, Levin, Constant & Friedman, New York City, of counsel, for defendants AARK Enterprises and AARK Enterprises, Inc.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

This case is again before this Court on the motion of cross-defendants AARK Enterprises and AARK Enterprises, Inc. (referred to collectively as "AARK"), for dismissal of counts II and III of the cross-claim of defendant Christiana Companies, Inc. ("Christiana") (Docket Item ["D.I."] 100), and on the motion of Christiana to compel discovery from AARK.[1]

## I. BACKGROUND

The subject matter of the original claim in this suit is a series of promissory notes ("the airplane notes") executed by Christiana in connection with a complex, leveraged sale-leaseback transaction. The transaction, called a "participation agreement" by the parties to it, included Christiana's purchase of two Boeing 737 jets from AARK and the subsequent leasing back of those jets to a previous purchaser, Air Florida. (D.I. 68 at 7–10.) The various parties to the agreement entered it relying on each other's solvency and with the intention of taking advantage of what they thought was favorable federal tax law; their judgments about each other and the law have proven inaccurate. AARK and others have apparently defaulted on obligations under sales, lease, and security contracts (id. at 10), and, in July of 1983, the Internal Revenue Service issued a notice of deficiency to Christiana, announcing its determination that the transactions effected pursuant to the participation agreement lacked economic substance and would therefore be denied the advantageous tax treatment Christiana had expected. (Id. at 11.)

The original plaintiff in this case, Derry Finance N.V. ("Derry"), became entangled with AARK and Christiana in mid-year 1981. At that time Derry loaned AARK over five million dollars and took as security for AARK's repayment an assignment of six of the eight airplane notes Christiana had executed. (See D.I. 90 at 12; D.I. 75 at 29.) One year later, Derry brought this suit against Christiana to recover on the airplane notes. (D.I. 1.)

Approximately a year and a half after Derry commenced this suit against Christiana, the latter moved the Court to compel the joinder of AARK as a defendant. (D.I. 72.) By a February 8, 1984 order of this Court, Christiana's motion was granted (D.I. 85) and AARK was accordingly joined. (D.I. 87.) Christiana then filed against AARK the cross-claim now at issue. (D.I. 90.)

## II. THE MOTION TO DISMISS

### A. Factual Setting

Counts II and III of Christiana's cross-claim against AARK stem from an entirely different set of transactions than that which produced the airplane notes on which Derry is suing. Before it got involved in the airplane leasing arrangement, Christiana and AARK had done business together in a series of sale-leaseback transactions concerning computer equipment. (D.I. 90 at 23–25.) As nearly as the Court can determine from Christiana's account of the convoluted dealings,[2] each of these computer transactions was carried out as follows: (1) AARK sold computer equipment to Christiana under a purchase agreement which called for Christiana to pay for the equipment in part by cash, in part by issuance of promissory notes ("computer notes"), and in part by issuance of a non-recourse installment promissory note secured by a security agreement between Christiana and AARK. (2) The equipment purchased was subject to a user lease to an

---

1. A motion for leave to withdraw from representation was filed by counsel for AARK and argued at the same hearing as the motions treated herein, but that motion will be resolved separately.

2. The design of the parties in entering these contorted contracts was, as it would be with the airplane "participation agreement," to avoid federal taxes. The I.R.S., however, was no more impressed by the computer transactions than it was with the airplane sale-leaseback arrangements; at the same time it denied tax benefits for the airplane deals, it did likewise for the computer deals as well. (D.I. 90 at 26.)

unrelated party; AARK assigned its rights as lessor to Christiana. (3) Christiana in turn assigned its right to payments under the lease to Computer Equipment Investors, Inc. ("C.E.I.") (4) C.E.I. and Christiana then executed an agreement which secured Christiana's rights to payment from C.E.I. by giving Christiana a security interest in payments due under the user lease. (*Id.* at 23–24.)

Fifteen such transactions in all were completed between January 24, 1979 and November 1, 1979. (D.I. 103 at 9.) On July 22, 1981, at the same time trouble was developing over the airplane "participation agreement," AARK notified Christiana that Christiana was in default on the computer notes and that, under the terms of an acceleration clause in the notes, all of Christiana's payment obligations under the notes were immediately due in full. (D.I. 111 at 7.) Two days later, AARK sent a second letter to Christiana acknowledging receipt from Christiana of $97,701.44 and stating that it was applying that payment pro rata not only to the computer notes but also to airplane notes which had coincidentally come due on the same day as the computer notes. (*Id.* at appendix A, July 24, 1981 letter from Howard E. Rubin, Chief Financial Officer of AARK, to Christiana.) In fact, however, AARK applied the payment as Christiana had apparently intended (*id.* at 8): the payment was credited to the computer notes, reducing the principal due thereon to zero and applying the excess to interest due. (D.I. 119.)

Approximately one week after sending notice of default to Christiana, AARK filed suit in the New York Supreme Court, New York County, seeking payment on both the computer notes and the airplane notes. *AARK Enterprises v. The Christiana Companies, Inc.,* Index No. 16851/81. AARK has since reassigned [3] the airplane notes to Derry and voluntarily discontinued its claims on them in the New York action. (D.I. 103 at 13.) Neither party has pressed

the New York litigation; it has been represented that no answer has been filed and no discovery undertaken. (D.I. 111 at 14.)

### B. *Legal Considerations and Conclusion*

█ An asserted cross-claim must arise out of the transaction or occurrence that is the subject matter of either the original claim or of a counterclaim thereto, otherwise it will not be permitted as a cross-claim. *Danner v. Anskis,* 256 F.2d 123, 124 (3d Cir.1958); *Tycom Corp. v. Redactron Corp.,* 421 F.Supp. 460, 463 (D.Del.1976). Counts II and III of Christiana's cross-claim fail this test, as Christiana itself has effectively argued in the past.

In their travels between courthouses in New York and Delaware, AARK and Christiana have demonstrated nimble legerdemain in varying the legal conclusions which they draw from their factual representations. As each is eager to point out about the other, they have taken in New York entirely contradictory positions to those asserted in this Court, and it is therefore difficult to credit the arguments that either have made. Nevertheless, Christiana's own statements in the New York action are an appropriate starting point for analyzing the degree of interrelation, or lack thereof, between the computer transactions which underlie cross-claim counts II and III and the airplane transactions which are at the heart of Derry's original claim in this suit. In a memorandum supporting its motion in the New York court to dismiss AARK's claim on the airplane notes, Christiana made the following statements:

That the two sets of transactions [i.e., the computer and airplane transactions] are unrelated is readily apparent.

(D.I. 116, Exhibit C at 2.)

In addition to the obvious differences in complexity and financial magnitude between the computer sales and the airplane transactions, the inherent differences between computers and airplanes

---

**3.** A ٰRK ha̠d already assigned the airplane notes to ᵖerry on̲ce. Then, in order to make these notes part of its New York lawsuit, AARK obtained a reassignment of them from Derry. (D.I. 38 at 6.)

resulted in different considerations as to such factors as: (1) present market and resale value, (2) applicable criteria for gauging depreciation, (3) insurance costs and scope of coverage, and (4) costs of operation.

(*Id.* at 3.)

Christiana's participation in an airplane transaction did *not* arise in the context of any computer equipment sale.

(*Id.* at 5; emphasis in original.) In further support of that motion, Christiana filed an affidavit of its Chairman and President, Martin Fenton, Jr., which states:

The only similarity between the computer equipment transactions and the airplane transactions is that Christiana is a party to both sets of transactions. This is where the analogy ends. The nature of the equipment is vastly different, the financial considerations of the two types of transactions are vastly different, the participants to the transactions are different, the documentation is different and the magnitude is different.

(D.I. 116, Exhibit C, affidavit of Martin Fenton, Jr. at ¶ 12.)

These are convincing arguments and averments, far more convincing than Christiana's contrary protestations in this Court that the two sets of transactions are so intermingled they should be tried together in Derry's suit on the airplane notes. (D.I. 111 at 15–26.) Christiana at oral argument continued to acknowledge the separateness of the computer and airplane transactions (D.I. 120 at 13–15), but then contended that these disputes should all be resolved in this suit because AARK "scrambled the eggs" when it told Christiana it was going to apply the July 24th payment of $97,701.44 pro rata to both computer and airplane notes. (*Id.* at 15.) Yet, as Christiana itself has represented to the Court, none of the July 24th payment was applied to the airplane notes. (D.I. 119.) Apparently the eggs are only scrambled in Christiana's perception, not in fact, and that is not enough of a connection to warrant the joinder of claims so unrelated to Derry's original action.

Even if there were some connection between the asserted cross-claim counts and the original action sufficient to justify joinder, the Court would nevertheless be compelled to bar the cross-claim counts. When Christiana moved the Court to compel Derry to join AARK as a party-defendant to Derry's original action, Christiana made the following recitation of law:

Courts have long recognized that all parties to a contract should be before the Court if rescission is sought. In the landmark compulsory joinder case of *Shields v. Barrow*, 17 How. (58 U.S.) 130 [15 L.Ed. 158] (1854), the Court ruled that a bill to rescind a contract could not go forward without all parties to the contract being before the court:

For, if only a part of those interested in the contract are before the court, a decree of rescission must either destroy the rights of those who are absent, or leave the contract in full force as respects them; while it is set aside, and the contracting parties restored to their former condition as to the others.

58 U.S. at 139–140. This general principle has been recognized repeatedly. *See, e.g., Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir.1975), *cert. denied*, 425 U.S. 903 [96 S.Ct. 1492, 47 L.Ed.2d 752] (1976) ("[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensible. This principle declared by the Supreme Court more than a century ago ... is codified in Rule 19 ....") (citations omitted). *See also Broussard v. Columbia Gulf Transmission Co.*, 398 F.2d 885, 888 (5th Cir.1968); *Spanner v. Brandt*, 1 F.R.D. 555, 557 (S.D.N.Y.1941); *Richmond Lace Works, Inc. v. Epstein*, 31 F.R.D. 150, 151, 153 (S.D.N.Y.1962); *Smith v. Bader*, 458 F.Supp. 1184, 1187 (S.D.N.Y.1978).

The Court found persuasive the law thus expressed (D.I. 84 at 7–8) and continues to find it so, which is why Christiana's claims arising from the computer transactions

may not be litigated without C.E.I. being a party to the suit.

The fifteen computer transactions are all multi-party sale-leaseback arrangements in which C.E.I. has an integral role, a role so intertwined with the roles of AARK and Christiana that any decree of rescission would necessarily affect all three. The Court therefore concludes as a matter of equity and good conscience that C.E.I. must be regarded as an indispensable party to Christiana's cross-claim counts II and III and those counts must accordingly be dismissed. Fed.R.Civ.P. 19(b).[4]

This decision should not cause Christiana any hardship. The claims dismissed in this Court can easily be asserted as counterclaims in the New York suit which AARK is maintaining against Christiana. The issue of AARK's good faith or bad faith in dealing with Christiana over the course of their business association may be inquired into by Christiana at trial, so far as it is relevant to those claims and defenses which remain in this case.

## III. THE MOTION TO COMPEL DISCOVERY

Christiana's motion to compel is granted; its request for sanctions, denied.

■ AARK's objections to Christiana's discovery requests are apparently two-fold: (1) that the requests are ambiguous, and (2) that the requests are overbroad. Concerning the first objection, the Court recognizes that Christiana's counsel created a facially ambiguous subpoena by failing to include AARK the New York partnership in seeking discovery from AARK the Delaware corporation and by leaving uncorrected a typographical error[5] which substantially altered the discovery requested. Nevertheless, the Court believes that in the context of this litigation and the dealings between opposing counsel the intended meaning of the subpoena has been made perfectly clear;[6] AARK simply doesn't like that meaning, as evidenced by its second objection.

■ AARK claims that Christiana's requests for production are overbroad because they seek documents related to the computer transactions (D.I. 107 at 14–19), and because they seek accounting records and statements of financial condition (*id.* at 8–13), but both subjects are relevant to this case. As noted in the preceding section of this opinion, the computer transactions are relevant to the issue of AARK's good faith in its course of dealing with Christiana. The accounting records and documents relating to AARK's financial condition are

---

**4.** Though it may be argued that AARK's 12(b)(7) defense is procedurally flawed in its timing, the Court accepts the defense under rule 12(h)(2), noting that such a defense is of sufficient importance to warrant even *sua sponte* consideration. *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 111, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968); *GTE Sylvania v. Consumer Product Safety Comm'n,* 598 F.2d 790, 798 (3d Cir.1979), *aff'd,* 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980); Wright & Miller, Federal Practice & Procedure: Civil § 1609.

**5.** In the notice of deposition and subpoena *duces tecum* served on AARK (D.I. 26), Christiana requested that AARK produce "all ... [documents] in the possession or under the control of *Derry* relating to one or more ... [listed] categories[.]" (*Id.* at 3, emphasis added.) Of course AARK could not comply with such a request and the request itself, if taken literally, would not be proper under the rules, Fed.R.Civ.P. 34(a). The immediate and reasonable conclusion is that counsel for Christiana inadvertently

allowed the word "Derry" to be substituted for the word "AARK." That's poor proofreading but not so perplexing that the subpoena can be called ambiguous.

**6.** AARK cites one further instance of confusion with Christiana's request. In listing the specific categories of documents of which it desired production, Christiana asked for: "The Financial condition of AARK since July 1, 1978, the identity of its shareholders, partners or other principals, its organization, and other public information concerning the business of AARK ...." (D.I. 26 at 5.) AARK contends the use of the word "public" in connection with information about AARK's business makes the request "unclear" because AARK is privately held and therefore there is no public information about its financial condition. (D.I. 107 at 9.) The request, however, seems clear enough. If there is no public information, then AARK need not concern itself with supplying any. The private *information specifically requested is all that is* required.

relevant because they may explain why AARK apparently defaulted on its obligations and why AARK discounted and assigned the notes at the heart of this litigation. AARK's financial condition may also be relevant when questioning witnesses about AARK's good faith in dealing with Christiana. Being relevant, the documents requested are subject to discovery, even though the process of production may be tedious and expensive.

■ Christiana's motion for attorneys' fees is denied because, after reviewing the briefs and the transcript of oral argument on the motion to compel, the Court believes that AARK was substantially justified in its opposition to the motion. Though Christiana alleges there are "inexplicable gaps" in AARK's production (D.I. 112 at 11), the only gaps appear to be based on reasonable arguments of privilege and relevance and on difficulties AARK has experienced with its former counsel, Austrian, Lance & Stewart, which resulted in that law firm withholding AARK documents from AARK and its present counsel. Sanctions are not to be imposed as a matter of course upon the losing party in a discovery dispute. In evaluating the behavior of litigants unable to cooperate, courts are required to exercise sound discretion, taking account of both the need to encourage compliance with discovery rules and the rights of parties to make good faith arguments in their own interest. AARK appears to have stayed within its rights in this dispute.

The Court expects the parties will make every reasonable effort to accommodate one another's concerns and therefore anticipates no further discovery conflicts requiring resolution by the Court. That cooperation should include the exchange of lists of documents each side is withholding from discovery on the basis of an asserted privilege. *See International Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 93–94 (1974).

An order will be entered in accordance with this memorandum opinion.