**DERRY FINANCE N.V., a Netherlands Antilles corporation, Plaintiff,**

and

**C.F.S. Planning Corporation and Richard Klein, Residents of California, Intervening Plaintiffs,**

v.

**The CHRISTIANA COMPANIES, INC., a Delaware corporation, AARK Enterprises, Inc., a Delaware corporation, and AARK Enterprises, a New York partnership, Defendants.**

**The CHRISTIANA COMPANIES, INC., a Delaware corporation, Defendant-Cross-Plaintiff,**

v.

**AARK ENTERPRISES, INC., a Delaware corporation, and AARK Enterprises, a New York partnership, Defendants-Cross-Defendants.**

Civ. A. No. 82–412–JLL.

United States District Court, D. Delaware.

Aug. 19, 1985.

Lawrence C. Ashby of Ashby, McKelvie & Geddes, Wilmington, Del. (Jerry J. Strochlic and Stuart A. Krause of Sage Gray Todd & Simms, New York City, of counsel), for plaintiff.

Aubrey B. Lank and Steven Goldberg of Theisen, Lank, Mulford and Goldberg, P.A., Wilmington, Del. (Lester A. Katz and Frances F. Rogala of Baskin and Steingut, P.C., Washington, D.C., of counsel), for intervening plaintiffs.

William J. Wade of Richards, Layton & Finger, Wilmington, Del. (Jerome Wiener and Mark K. Thomas of Antonow & Fink, Chicago, Ill., of counsel), for defendants The Christiana Companies, Inc.

## OPINION

LATCHUM, Senior District Judge.

This diversity case [1] is presently before the Court on the cross-motions of plaintiff Derry Finance N.V. ("Derry") (Docket Item ["D.I."] 164), and defendant The Christiana Companies, Inc. ("Christiana") (D.I. 161) for summary judgment on Derry's second amended complaint. (D.I. 87.) The complaint demands judgment against Christiana for $4,720,000 plus interest at the rate of thirteen and one-half percent per annum running from July 15, 1981. (*Id.*) This is the debt Derry claims Christiana owes to it on six promissory notes. Because the Court holds that an exculpatory clause in the notes relieves Christiana of any obligation to pay on them, Christiana's motion for summary judgment in its favor will be granted and Derry's motion for summary judgment in its favor will be denied.

## BACKGROUND

The facts underlying this dispute have been set forth in previously published opinions. *See* 102 F.R.D. 892, 893 (D.Del.1984); 555 F.Supp. 1043, 1044 (D.Del.1983). For present purposes, it is sufficient to high-

---

1. Questions concerning the existence of jurisdiction have already been resolved in earlier rulings by this Court. (*See* Docket Item ["D.I."] 65; D.I. 84.)

light the following undisputed facts. Derry acquired the notes on which it is suing from defendant AARK Enterprises ("AARK") as security for a loan that Derry made to AARK in May of 1981. (D.I. 87 at 4–5.) The notes had originally been executed by Christiana payable to AARK in December of 1979 as part of a so-called "Participation Agreement," a complicated tax-avoidance scheme which involved several businesses and was based on the repeated sale and leasing-back of two jet aircraft. (D.I. 90 at 11–14.) A participant with AARK and Christiana in the scheme was AIG 737–I, Inc. ("AIG"). (*Id.*) The concocted tax shelter called, among other things, for AIG to sell the jets to AARK, who would in turn sell them to Christiana, who would then lease them back to AIG. (*Id.* at 12–13.) Christiana, recognizing that the value to it of these transactions could only be realized if all the parties involved fulfilled their obligations fully and on schedule (D.I. 166A at A112–13), wanted some escape from liability in the event that any party's default brought the whole shelter tumbling down. (*See id.* at A4–5.) Remarkably, it got what it wanted. AARK agreed to include (D.I. 167A at A36), and there is included, this clause in each of the promissory notes which Christiana executed and on which this suit is based:

> Payor and Payee, among others, are parties to a certain Participation Agreement of even date herewith concerning a certain Boeing 737–100, S/N 19769 [or 19770] ("Participation Agreement"). Anything herein to the contrary notwithstanding, payor shall not have any obligation to pay this note nor shall payor have any liability hereunder if, on the maturity date of this note, a default exists under the Participation Agreement or any note, lease, agreement or document contemplated therein, including, without limitation, the Loan Certificates, the Lease and the Overlease (as those terms are defined in the "Participation Agreement").

(*E.g., id.* at A48.) The meaning and effect of this clause, particularly of the word "default", are the dispositive issues in the cross-motions before the Court. Christiana asserts that certain undisputed failures by AIG and AARK to perform or pay are defaults excusing it from liability. (D.I. 166 at 2.) Derry argues that the failures do not constitute defaults as that term is used in the notes and that Christiana accordingly remains liable. (D.I. 167 at 2–3.) In the alternative, Derry argues that the doctrines of waiver or equitable estoppel should be applied to defeat Christiana's defense to liability. (*Id.* at 27–29.)

## LAW

### A. *Choice of Law*

■ The promissory notes state that they "shall be construed in accordance with and governed by the laws of New York...." (*E.g.,* D.I. 166A at A48.) Because this Court sitting in diversity is bound to apply the laws of Delaware, including its conflict of laws rules, *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), and because Delaware has recognized a right of contracting parties [2] to choose the law that governs their relationship, *Wilmington Trust Co. v. Wilmington Trust Co.,* Del.Supr., 24 A.2d 309, 313 (1942); *Falcon Tankers, Inc. v. Litton Systems, Inc.,* Del.Super., 300 A.2d 231, 235 (1972), this Court turns to New York law to guide its resolution of the case at bar.

### B. *Meaning of "Default" in the Notes' Exculpatory Clauses*

New York has long held to the standard dictionary definition of "default" as " 'the non-performance of a duty whether arising out of a contract or otherwise.' " *Greco v. S.S. Kresge Co.,* 277 N.Y. 26, 12 N.E.2d 557, 561 (1938) (quoting 1 Bouv. Law Dict.,

---

**2.** It is a common sense rule that promissory notes are a variety of contract and are to be so construed and enforced. *See Swift & Co., Inc. v. Bankers Trust Co.,* 280 N.Y. 135, 19 N.E.2d 992, 994 (1939); *accord Hartford Federal Savings and Loan Ass'n v. Green,* 36 Conn.Sup. 506, 412 A.2d 709, 713 (1979); *Sabine v. Leonard,* 322 S.W.2d 831, 837 (Mo.1959); 11 Am.Jur.2d, Bills and Notes § 1.

Rawles 3d Rev. at 814). Christiana avers (D.I. 166 at 16), and Derry does not deny (D.I. 167 at 25–27), that on the date payment came due on the notes,[3] AARK had not fulfilled its duty under its contracts with AIG for the purchase of the jets, in that it had failed to pay sums required by those contracts.[4] (D.I. 167B at A485.) Under the ordinary meaning of the word "default" and hence under New York law, that non-performance by AARK of its contractual duty to AIG would constitute a default and, by the plain terms of the exculpatory clause, excuse Christiana from all liability on the notes. The question for the Court to consider, then, is whether the word "default" should be given a construction at variance with its ordinary meaning.

Derry argues vehemently but not persuasively that the word "default" must be construed according to the various documents executed in connection with the Participation Agreement and, more particularly, according to the interpretation held by the parties to each document as to that document's meaning. The practical effect of such a construction is that a default releasing liability on the notes could only exist if an aggrieved party chose to take action on a default under a connected contract. (D.I. 167 at 21–23, 25–27.) According to this reasoning, AARK's failure to pay AIG scheduled sums on the jet sales agreement did not constitute a default on that contract because AARK and AIG reached a separate, oral agreement granting AARK temporary forgiveness of the debt, and hence the failure to pay was also not a default triggering a release from liability on Christiana's notes. (*Id.* at 25–27; D.I. 167A at A117.) But Derry cannot point to anything in the notes which leads

to such a construction, nor is there anything inherently ambiguous about the word "default" which leads to such a construction. New York law plainly states that "before the rules governing the construction of ambiguous contracts are triggered, the court must first find ambiguity in the [contract][,]" *Breed v. Insurance Co. of North America,* 46 N.Y.2d 351, 413 N.Y. S.2d 352, 354, 385 N.E.2d 1280, 1282 (1978), and this Court finds none. The language is plain; "the words in the paragraph[ ] of the [contract] under examination have a definite and precise meaning, unattended by danger of misconception *in the purport of the [contract] itself,* and considering which there is no reasonable basis for a difference of opinion." (*Id.*) (Emphasis added.)

Christiana and AARK knew how to incorporate the meaning of other documents into the notes; they did so in the exculpatory clause itself. At the end of the clause, these words appear: "any note, lease, agreement or document contemplated therein, including, without limitation, the Loan Certificates, the Lease and the Overlease (as those terms are defined in the "Participation Agreement")." (*E.g.,* D.I. 166A at A48.) Specific reference is made to the Participation Agreement for a specialized definition of the three capitalized terms. In contrast, the words "note," "lease," "agreement," and "document" are not capitalized or otherwise set apart, prompting the conclusion that they are not intended to have any meaning peculiar to the transactions flowing from the Participation Agreement. That is the same conclusion which must be drawn about the word "default." It is used in an ordinary fashion, without reference to any idiosync-

---

**3.** Derry and Christiana are at odds about whether two or all of the notes became due on July 15, 1981. (D.I. 170 at 2–3.) That is the payment date scheduled for two of the notes, but the notes provide that failure to pay a note when due automatically accelerates liability on all the notes. (*E.g.,* 166A at A47–48.) Therefore, because all the notes became due when Christiana refused to pay on the first two notes, the Court's disposition of the summary judgment motions now before it applies to liability on all of the notes. AARK notified Christiana of the acceler-

ation (*see* D.I. 173A at A3–4) and Derry has likewise taken the position that the notes have been accelerated. (D.I. 173 at 3 n. *.)

**4.** Christiana has alleged other defaults which might excuse it from liability (D.I. 166 at 16–17; D.I. 170 at 11–12), but, again, these need not be addressed because of the Court's determination on the AARK–AIG default discussed in this opinion.

ratic definition, and thus bears its ordinary meaning. *See Carpenter v. Machold*, 86 A.D.2d 727, 447 N.Y.S.2d 46, 47 (1982).

Derry complains that to so construe the clause runs directly counter to New York law as explained in an unreported opinion of the Supreme Court of New York County, Special Term, in *Recife Realty Co., N.V., Inc. v. Marine Midland Bank, N.A.*, C.A. No. 01422/84 # 66 (Mar. 23, 1984) (reproduced in D.I. 167B at A524–29). (D.I. 173 at 9–10.) That opinion, however, is not at all the important precedent Derry apparently believes it to be. The court in *Recife* was dealing with the provisions of a single contract. (*Recife, supra*, slip op. at 1–2.) The court held that when a contract contains a requirement that notice and an opportunity to cure be given a defaulting party before legal action is taken on the default, the aggrieved party may not proceed to court in derogation of that requirement. *Id.* at 5–6. Far from being significant, *Recife* is not even pertinent to this case, the obvious distinction being Derry's effort to lift a definition of default from one contract and impose it on the provisions of an entirely different contract between different parties. The other cases Derry cites on this issue can be similarly distinguished.

Supporting the "plain-meaning" interpretation of the clause urged by Christiana and accepted by this Court is the common-sense observation that someone so concerned about the reliability of his business associates that he negotiates a liability-release stipulation against the possibility of their defaulting is not then going to accept, let alone design,[5] an arrangement giving those associates power to declare whether and when there has been a default. Were the Court to accept the construction suggested by Derry the exculpatory clause

would become self-defeating. A logical reading of the provision will not be rejected in favor of one that presumes irrational drafting.

## C. *Equitable Estoppel and Waiver*

Derry's final arguments against Christiana's motion for a favorable summary judgment are that Christiana should, in equity, be estopped from raising AARK's default on the jet sales agreement as a defense to liability on the notes or should be held to have waived that defense. (D.I. 167 at 27–29; D.I. 173 at 10–14.)

The waiver argument requires little attention. Under New York law, a waiver is "the intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it." *City of New York v. State*, 40 N.Y.2d 659, 389 N.Y.S.2d 332, 357 N.E.2d 988, 995 (1976) (quoting Whitney, *Contracts* at 273 (4th ed. 1946)). Derry does not contend, nor could it, that Christiana waived the defense embodied in the exculpatory clause. By Derry's own account, Christiana continually refused requests that the clause be stricken. (D.I. 167 at 13.) Instead, the argument seems to be that Christiana should be held to have waived any right to assert particular defaults, including the AARK default, as a defense to liability because of its business-as-usual conduct and its silence about the default until July of 1981, despite its allegedly having known of the problems for some time. (*Id.* at 27.) Derry acknowledges that in so arguing it is using the concepts of waiver and estoppel interchangeably, and it asserts that such usage is consonant with New York law. (*Id.*) But Derry has cited no cases to that effect and the Court's own research indicates that New York does not regard estoppel and waiver as equivalents.

---

**5.** Derry makes much of the fact that the notes' exculpatory clause was drafted by Christiana (*see* D.I. 173 at 4–5), and calls for application of "the well-settled rule that contract language is to be construed against the draftsmen[.]" (*Id.* at 4.) But Derry ignores a significant point of fact and of law. The fact is that the clause was a subject of negotiation between the parties; it

was not a piece of boilerplate from a form contract. (D.I. 170A at A135.) The law is that, in any case, the rule cited by Derry applies only when there is an ambiguity in the contract. *See 67 Wall St. Co. v. Franklin Nat'l Bank*, 37 N.Y.S.2d 245, 371 N.Y.S.2d 915, 333 N.E.2d 184, 187 (1975).

*See, e.g., Horne v. Radiological Health Service, P.C.*, 83 Misc.2d 446, 371 N.Y.S.2d 948, 960 (N.Y.Sup.Ct.), *aff'd*, 51 A.D.2d 544, 379 N.Y.S.2d 374 (1976) ("A waiver, unlike estoppel, is dependent solely on what one party intends to do and there is no need to show reliance by the party asserting it."). Recognizing the general reluctance of courts to grant summary judgment in cases involving a question of intent, *Look Magazine Enterprises, S.A. v. Look, Inc.*, 596 F.Supp. 774, 779 (D.Del.1984), and bearing in mind the responsibility to draw every reasonable inference in Derry's favor while considering Christiana's summary judgment motion, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), the Court nevertheless holds without hesitation that Derry has failed to demonstrate any intent on Christiana's part to waive a defense based on AARK's default. There is nothing in the record showing an intentional waiver, and, by New York's definition, there is no such thing as an unintentional waiver.[6] Derry's failure to spend more than a two-sentence paragraph on this topic (*see* D.I. 167 at 27) indicates that even it does not regard its argument as worthy of serious consideration.

The estoppel argument, on the other hand, Derry presses with vigor.[7] "Christiana deliberately misled all parties ... into believing it would not assert any claim of default excusing payment under the recourse notes." (*Id.* at 29.) There is, however, a fatal lack of factual support for that assertion.

New York law requires a party seeking to invoke the doctrine of equitable estoppel to demonstrate the following:

[A]s related to the party estopped ...[,] (1) [c]onduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts[;] [a]s related to the party claiming estoppel, ... (1) [l]ack of knowledge and of the means of acquiring knowledge of the truth as to the facts in question; (2) reliance upon conduct of the party estopped; (3) action based thereon of such a character as to change his position prejudicially.

*State Bank of Albany v. Fioravanti*, 70 A.D.2d 1011, 418 N.Y.S.2d 202, 203–04 (1979), *aff'd*, 51 N.Y.2d 638, 435 N.Y.S.2d 947, 417 N.E.2d 60 (1980).[8] Derry's whole

---

6. This statement of the law is not inconsistent with the Court's cursory remarks on New York law in the case of *Process & Storage Vessels, Inc. v. Tank Service, Inc.*, 541 F.Supp. 725 (D.Del. 1982), *aff'd*, 760 F.2d 260 (3rd Cir.1985). In that case, the Court conjectured,

"there may possibly [be] ... a case for waiver of the ... limitation period or estoppel to enforce it. Under New York law, a misrepresentation by a defendant or his agent upon which a plaintiff relies to his detriment may be sufficient to defeat an otherwise valid limitation defense, even though the misrepresentation may have been innocently made, viz., without any intent to deceive." 541 F.Supp. at 732 (footnote and citations omitted).

The Court at that time did not distinguish between waiver and estoppel, but the statement of law relates to estoppel only. Waiver does require a showing of intent, i.e., the intent of the defendant to forego the potential defense. *See Horne, supra*, 371 N.Y.S.2d at 960.

7. On this point and others in its briefs, Derry's confidence in the correctness of its own position appears to have carried it beyond the bounds of ordinary argument and into *ad hominem*-style attacks on Christiana. It ought to go without saying that dispassionate and careful reasoning is more helpful to the Court than is the constant labeling of the opposition's arguments or actions as "ludicrous," (D.I. 167 at 22), "preposterous," (*id.*), "cynical," (D.I. 167 at 30), "tortuous," (D.I. 173 at 5 n. *), "absurd," (*id.*), "outrageous," (D.I. 167 at 26), or a show of "gall." (D.I. 167 at 30.)

8. At oral argument, counsel for Derry cited this Court's opinion in *Process & Storage Vessels, Inc.*, the relevant portion of which is quoted at n. 6, *supra*. The Court is satisfied that its brief rendition in that case of the law governing estoppel in statute of limitations cases and the language quoted above from *Albany v. Fioravanti* are both accurate statements of New York law. Application of the doctrine of equitable

argument is that Christiana remained silent after it knew of AARK's default on the jet sales agreement, that Christiana carried on with its participation in the sales-leaseback arrangement without comment on the default, and that when inquiries were made to Christiana, it stated that it intended to pay off the notes. (D.I. 167 at 28.) But even assuming the truth of these allegations, Derry has failed to demonstrate all of the essential elements just listed.

■ For example, it has not shown any false representation or concealment of material fact. If Christiana at some point stated an intention to pay off the notes, that is irrelevant without proof, lacking here, that the statement was a lie when made, because "a truthful statement as to the present intention of a party with regard to his future acts is not the foundation upon which an estoppel may be built. The intention is subject to change. Here it was changed." *Metropolitan Life Ins. Co. v. Childs Co.*, 230 N.Y. 285, 130 N.E. 295, 298 (1921). For the same reason, Christiana's business-as-usual attitude, on which Derry lays such stress, is without relevance. Christiana had no obligation to make immediate objection to defaults, and it had no right to claim the benefit of a default any earlier than it did. The terms of the notes provide that if, on the date a note fell due, a default existed somewhere in the Participation Agreement's network of transactions, then Christiana was released from liability on that note. (*E.g.*, D.I. 166A at A48.) It is not a misrepresentation or concealment of material fact for a party entitled to remain silent to do so. *Cf. Joseph Shultz & Co. v. Camden Fire Ins. Ass'n*, 304 N.Y. 143, 106 N.E.2d 273, 275 (1952);

*Hartford Accident and Indemnity Co. v. Oles*, 152 Misc. 876, 274 N.Y.S. 349, 354 (N.Y.Sup.Ct.1934).

Neither has Derry shown that Christiana intended for it to rely on any conduct or representation of Christiana's. It is undisputed that Derry never had direct contact with anyone from Christiana before taking assignment of the notes. A Mr. Weymouth, a mutual, personal friend of an officer of Christiana and a principal of Derry, inquired about the notes during a telephone conversation with the Christiana officer. All that the Christiana officer apparently knew was that Mr. Weymouth was curious because his family "had been offered a participation in the notes through some friends of theirs in Bermuda." (D.I. 167A at A43.) The "friends of theirs," turned out to be the principal of Derry who subsequently relied on Mr. Weymouth's report of his phone call with the Christiana officer to consummate a five million dollar loan, taking the notes as security. There is nothing in the record, however, that suggests Christiana even knew of Derry's existence, let alone that it intended for Derry to rely on something a company officer said in a phone conversation with a personal friend who otherwise has no connection with Christiana.

■ Furthermore, the very fact that Derry would lend money and take the notes on the basis of assurances supposedly given by someone without official connection to Christiana is in itself sufficient reason to reject Derry's argument for equitable estoppel. "An estoppel rests upon the word or deed of one party upon which another *rightfully* relies," *Metropolitan Life Ins.*

estoppel to cases in which the asserted defense is the statute of limitations is exceptional in that the ordinary requirement of fraud or bad faith as a prerequisite for estoppel, *see Rothschild v. Title Guarantee & Trust Co.*, 204 N.Y. 458, 97 N.E. 879, 880–81 (1912), is relaxed and even unintentional misrepresentation is sufficient to support the invocation of the doctrine. *See Dupuis v. Van Natten*, 61 A.D.2d 293, 402 N.Y. S.2d 242, 243 (1978); *Gross v. Newburger, Loeb & Co., Inc.*, 103 Misc.2d 417, 426 N.Y.S.2d 667, 676 (N.Y.Sup.Ct.1980), *modified on other grounds*, 85 A.D.2d 709, 445 N.Y.S.2d 830 (1981);

*Fraud, Misrepresentation, or Deception as Estopping Reliance on the Statute of Limitations*, 43 A.L.R.3d 429, § 4(b). This more generous application of estoppel is apparently grounded in the belief that the statutory provisions for preventing stale claims should not be employed as offensive or tactical weapons. *See Gross, supra*, 426 N.Y.S.2d at 676. That concern is unique to statute of limitations cases and does not affect the case before the Court. The statement of law quoted from *Albany v. Fioravanti, supra*, has been approved by the New York Court of Appeals and it is controlling.

*Co., supra,* 130 N.E. at 298 (N.Y.1921) (emphasis added), and there can be no claim of right or reasonableness in doing business based on the kind of through-the-grapevine information Derry appears to have relied on in this case.

CONCLUSION

The short of this whole matter is that Derry can blame no one but itself for its decision to take notes so obviously and easily rendered worthless at the option of the debtor. The transactions underlying this lawsuit were all undertaken by presumably sophisticated businesses with access to competent financial and legal advice. Given that, it is surprising indeed that one of them would agree to the inclusion of the exculpatory clause in the first instance; it's more surprising still that another would accept such notes to secure a multimillion dollar loan. But having accepted them, that party must bear the loss.

An order will be entered in accordance with this opinion.